ESTATE OF ISABELLA L. SWEITZER, DEC'D.

APPEAL BY N. B. SWEITZER ET AL. FROM THE ORPHANS'
COURT OF FAYETTE COUNTY.

Argued May 11, 1891—Decided May 25, 1891.

(a) A testatrix bequeathed all her household effects, except the silver, to
her sister Charlotte, for life, and then provided: "After my household
effects, I bequeath one tenth of all I possess to charitable objects, as
follows: "—naming said objects. The next provision was the follow-
ing:

(b) "The rest or nine tenths of my available stocks I bequeath to my
sister Charlotte, during her lifetime, after her death to be divided
equally between the children of my brother." The testatrix owned
certain mining stocks, referred to in a subsequent part of her will, but
inventoried as worthless:

1. The terms of the whole will showing a disposition of the entire estate,
the provision (b), quoted, passed to the sister Charlotte the personal
estate of the testatrix, not otherwise disposed of, to the extent of nine
tenths of the whole, the mining stocks appraised as worthless excepted.

2. Wherefore, the words "available stocks," considered in connection
with the other provisions of the will, embraced in the bequest to the
sister Charlotte, for life, cash, notes, shares of corporate stock, United
States four per cent bonds, and corporate bonds or loans of a navigation
company. *

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 21 January Term 1891, Sup. Ct.; court below, No. 41
June Term 1889, O. C.

On June 15, 1889, the first and partial account of Hayden
W. Robinson, one of the executors of the will of Miss Isabella
L. Sweitzer, deceased, was confirmed absolutely, and *Mr. S. E.
Ewing* was appointed auditor to make distribution.

On March 19, 1890, the auditor filed his report finding the
following facts:

Isabella L. Sweitzer died in September, 1888, unmarried and
without issue, leaving to survive her, as next of kin, her

---

* Cf. Markley's Est., 132 Pa. 352; Gold's Est., 133 Pa. 495.

Statement of Facts.

brothers Nelson B. Sweitzer and J. Bowman Sweitzer. The latter afterwards died, testate, and letters upon his estate were granted to Mary H. Sweitzer, his widow. The will of Miss Sweitzer, in her own handwriting, was as follows :

"BROWNSVILLE, December 16th, 1887.

" I, Isabella L. Sweitzer, of Brownsville, Fayette county, Pa., in dependence upon Almighty God, and with a feeling of thankfulness for his numberless mercies, spiritual and temporal, vouchsafed to me, believe it my duty to dispose of my worldly estate which he has committed to my stewardship ; I therefore make this my last will and testament, December 16th, 1887. I bequeath to my sister, Charlotte, wife of my brother, Wm. R. Sweitzer, deceased, all my household effects, except the silver, during her lifetime, at her death to be divided between the children of my brothers, Bowman and Nelson. After my household effects, I bequeath one tenth of all I possess to charitable objects, as follows : one fourth each to Diocesan Missions, Domestic Missions, Foreign Missions, and to the education of young men in the ministry of the Protestant Episcopal Church, so called now (or by whatever name hereafter called), to minister in the diocese of Pittsburgh. In this bequest, I desire first to provide for St. John's Church, West Brownsville. This, being the first mission work I engaged in after my confirmation, has always been very dear to my heart. The rest or nine tenths of my available stocks I bequeath to my sister, Charlotte, during her lifetime, after her death to be divided equally between the children of my brother, Nelson B. Sweitzer. The silver plate that belonged to my sister, Anna J. Cowell, also all the spoons that belonged to my grandparents, I wish put into a neat, substantial, communion service, to be given to Christ Church, as a memorial to my sainted parents, Henry and Ann Sweitzer, and her babe, also dear brother Will. The tankard to my parents, the chalice and patten to sister Annie and brother William R. Sweitzer. The alms-plate to little Harry. In addition to the above named silver, I will add the gravy spoons of my dear mother's set, and silver butter boat given me by my Aunt Taylor. The silver marked with parent's name, I bequeath to my niece, Mary Sweitzer. The dozen teaspoons marked A. E. S. to my niece, Annie Duncan. To my brother, Bowman, the silver cream urn that belonged

to my grandparents, to be given to Bettie Park, at his death. To my dear friend and former pastor, Rev. H. E. Hayden, in consideration of his kindness to my dear mother, and since her death to myself, I bequeath the sum of $500, to be given at the time of my death, or from the first dividend accruing thereafter. I also bequeath $500 to be appropriated to a stained-glass window, or a brass memorial to my grandparents, Jacob and Isabella L. Bowman, to be placed in Christ Church, Brownsville. My real estate I wish sold at a propitious time, and divided among my nieces and nephews, for their use during their lifetime, at the death of each one to be appropriated to charitable objects, as above named. Should my real estate, etc., at any time (mining stock, etc.,) amount to over $50,000, I bequeath the over amount to charitable objects; if it should be deemed advisable by the Bishop of the diocese of Pittsburgh, to use for the support of St. John's Church, West Brownsville; if not, to be used for the building of an orphans' home; and also, in connection with the above, a home for aged clergymen of the diocese of Pittsburgh. My lot and house adjoining St. John's Church, West Brownsville, I bequeath to said church, to be used for, or sold and the money appropriated towards a rectory for St. John's Church.

"I appoint as my executors, my brother, Nelson B. Sweitzer, sister Charlotte, and Hayden W. Robinson. In the absence of witnesses, I subscribe my name to the above, as my last will and testament.       ISABELLA L. SWEITZER."

Charlotte, designated by the testatrix as her sister, was Mrs, Charlotte C. Sweitzer, widow of William R. Sweitzer, deceased. The bequests to charitable objects failed, by reason of the fact that the will was not attested by two credible and disinterested witnesses: §11, act of April 26, 1855, P. L. 332.

The accountant had in his hands for distribution, under the will,

Notes amounting to . . . . . . $ 1,845
Shares in various companies, amounting to . . 3,175
Nine United States four per cent bonds, $1,000 each, 11,520
Eight Monongahela Nav. Co. bonds, $1,000 each, . 8,000

Nelson B. Sweitzer, and Mary H. Sweitzer, executrix of J. Bowman Sweitzer, deceased, claimed under the intestate laws all the above-mentioned items of personal property, save the

nine tenths of said corporation shares. Mrs. Charlotte C. Sweitzer claimed under the will the nine tenths of all said items of personal property.

The auditor, declining to consider testimony offered on the part of Mrs. Charlotte C. Sweitzer to show the intimate relations existing between the testatrix and Mrs. Sweitzer, and declarations of the former as to what she intended to give the latter in her will, was of the opinion,—citing Weidman's App., 42 Leg. Int. 338; Hancock's App., 112 Pa. 532; Howe's App., 126 Pa. 233; Rupp v. Eberly, 79 Pa. 141; Bender v. Dietrick, 7 W. & S. 284; Mission Boards' App., 91 Pa. 507; Miller's App., 113 Pa. 459; and Raudenbach's App., 87 Pa. 51,—that the testatrix "intended to bequeath to her sister Charlotte the nine tenths of all her shares in corporations and her loans to the national government and corporate bodies, and that the words of her will expressed this intention," and reported a distribution accordingly.

To the auditor's report, Nelson B. Sweitzer and Mary H. Sweitzer, executrix, filed exceptions alleging that the auditor erred:

1. In not finding and reporting as matter of law that said Isabella L. Sweitzer died intestate as to all the personal property mentioned by the auditor in his report, to wit:

Notes amounting to . . . . . . $ 1,845
Shares in various companies amounting to . . 3,175
Nine United States four per cent bonds, $1,000 each, 11,520
Eight Monongahela Navigation Co. bonds, $1,000 each, 8,000
except nine tenths of said "shares in various companies, amounting to $3,175." [1]

2. In not awarding to these exceptants all the above mentioned personal property (less the collateral-inheritance tax), except nine tenths of said "shares in various companies, amounting to $3,175.00." [2]

3. In finding and holding that the word "stocks," used by testatrix in her will, is a convertible term for the word "bonds," and that said word "stocks" carried the United States four per cent bonds and Monongahela Navigation Co. bonds above mentioned and set out in the report of said auditor. [3]

4. In not awarding to these exceptants the United States

four per cent bonds mentioned in his report, less the collateral-inheritance tax.

5. In not awarding to these exceptants the eight Monongahela Navigation Company bonds mentioned in his report, less the collateral-inheritance tax.

Mrs. Charlotte C. Sweitzer filed exceptions, alleging that the auditor erred:

1. In not awarding to exceptant the nine tenths of the notes in the hands of the accountant, amounting to $1,845.

2. In rejecting the testimony of the exceptant and of Rev. Horace E. Hayden and his wife as incompetent.

3. In not holding that exceptant, by the terms of the will of said decedent, especially by the term "the rest," in the second clause thereof, became the residuary legatee, and entitled to everything not specifically given away in said will.

Said exceptions having been argued, the court, EWING, J., on July 19, 1890, filed the following opinion:

By her will, Isabella L. Sweitzer, the testatrix, first bequeaths " to my sister Charlotte, wife of my brother, Wm. R. Sweitzer, deceased, all my household effects, except the silver, during her lifetime," etc. She next provides that " After my household effects, I bequeath one tenth of all I possess to charitable objects," and names those objects. Then follows the clause over which the contention arises, viz., " The rest or nine tenths of my available stocks I bequeath to my sister Charlotte, during her lifetime, after her death to be divided equally between the children of my brother, Nelson B. Sweitzer."

The heirs would construe this clause without regard to the other provisions in the will, and as if it read simply " nine tenths of my available stocks," and would interpret stocks to mean only shares of stock in incorporated companies; while the legatee would read it as if written " the rest " *of all I possess*, " or nine tenths of my available stocks," and would hold the latter part of the clause to in no wise limit or restrain the force of the words " the rest," beyond excluding unprofitable stocks, and, at the most, to be but a defective enumeration of what was intended to be embraced in the gift.

The auditor awarded Mrs. Sweitzer nine tenths of the stocks and bonds, holding that government bonds and bonds of incor-

porated companies are stocks. Both the legatee and heirs
have excepted to this distribution; the former because (1) the
auditor did not include in her share nine tenths of the notes;
(2) because he ruled out certain testimony; and (3) because
he did not find her to be entitled to all the personalty not
specifically given away by the will; and the heirs except to
Mrs. Sweitzer taking anything beyond nine tenths of the shares
of the available stocks of corporations.

Now, if this bequest be limited to "available stocks," it nec-
essarily results that this testatrix died intestate as to a consid-
erable portion of her personal estate. For, if stock be held to
mean only shares of corporation capital, as the heirs contend is
the ordinary acceptation of the term and the sense in which it
was used by the testatrix, then all the bonds, notes and cash,
aggregating nearly twenty-five thousand dollars, are excluded
from this gift and nowhere else disposed of in the will, and this
legatee gets only the dividends for life on some twenty-eight
hundred dollars worth of corporation shares, while the heirs,
for whom the will makes no provision, take absolutely the
large amount aforesaid. Or, if the interpretation given by the
auditor be correct, and stocks are held to include both govern-
ment and corporation bonds, the testatrix yet died intestate as
to the notes and cash, together amounting to about thirty-four
hundred dollars. The one tenth given to charity, however,
has not been deducted from the above aggregate, so that had
that gift been effectual the intestacy in the former case would
amount to over twenty-two thousand dollars, and in the latter
to over three thousand dollars. An examination of the will
should enable us to discover the intent of the testatrix, and to
determine what property is thereby disposed of, and whether
there really existed intestacy as to any. And what securities
would pass by a gift of stocks, it is not necessary to decide, un-
less we find this bequest limited to "available stocks."

A careful study of the entire will can hardly fail to impress
one with the belief, first, that the testatrix purposed and in-
tended by its provisions to dispose of her entire estate ; second,
that her sister-in-law, Mrs. Charlotte C. Sweitzer, was a promi-
nent object of her bounty; and, third, that her only heirs, her
brothers Nelson and Bowman, were not forgotten or over-
looked, but were present in her thoughts when she wrote her

Opinion of Court below.

will, and yet were not intended to be directly profited out of her estate, but were expressly passed by and their children preferred in their stead. Such appears to me to be the clearly expressed and necessarily implied intent of the testatrix.

Thus, as to the first point, she says in so many words, " I . . . believe it my duty to dispose of my worldly estate. . . . . I therefore make this my last will," etc. ; and she goes quite into detail in enumerating and disposing of her property, particularly mentioning many small articles thereof, and apparently names every person and object she desires to remember. Both the language employed and the care evidently exercised in regard to the comparatively trifling items of her personal estate, disprove any idea of intestacy, and particularly as to any such considerable portions of property as the bonds, notes or cash.

As to the second point, she first of all gives to Mrs. Sweitzer all her household effects, those articles which are most closely associated with her person and display the taste, life and character of the owner ; upon which she bestows her affections, and which are stamped with her individuality and are most suggestive of her presence ; and she then provides for her in this disputed clause of the will, and finally makes her executrix. Throughout the instrument she calls her " my sister," not sister-in-law, and clearly evinces her fondness for her. And, on the third point, she names her heirs, her brothers Bowman and Nelson, in her will, the former twice, the latter three times, makes Nelson one of her executors and gives Bowman a silver cream urn, and to their children, her nephews and nieces, gives the household effects, after Mrs. Sweitzer's death, and the proceeds of her real estate for life, and to Nelson's children gives in remainder the property about which this inquiry is made.

I, therefore, do not think the will permits either the construction contended for by the heirs or that found by the auditor. This part of the will should be viewed in the light gathered from the whole paper, and not read as if written merely " nine tenths of my available stocks." Full force and effect are required to be given to the words " the rest," and the particle " or," immediately following, is not to be construed as equivalent to consisting of. The words " the rest " evidently have reference to what remains of the property in part previ-

·ously given away; and the sentence, if written out in full, would be "the rest" *of all I possess,* "or nine tenths of my available stocks," etc. The latter part of this sentence does not specify what articles of property are to be alone understood as embraced in the preceding words, and was not so intended. Its object was, I think, two-fold, viz.: first to express the quantum or portion of the property given, and, secondly to exclude the mining stocks. The first part of this proposition is evidenced by the very words used, "nine tenths," and by reference being had to the prior disposition of the one tenth. And the purpose to exclude the mining stock appears from .the subsequent part of the will, where this stock is mentioned and its uncertain value implied. However, the will should be read in the light of the knowledge possessed by the testatrix when it was drawn, and with the purpose of thereby discovering and giving effect to her intention. Upon examination, then, of the inventory, it is discovered that the testatrix had one thousand shares of Fall River mining stock, and that said stock is there marked as "worthless." This stock would therefore be of no use to Mrs. Sweitzer, for whom the testatrix sought to provide an income for life, unless and until it should prove dividend-paying, which is apparently regarded as hardly within the possibilities. Yet the testatrix evidently thought that this stock might at some time have some value, for she seeks to provide for such a contingency. But no matter what value it might attain in the speculative market, it would still, without dividends, be useless, not available, to Mrs. Sweitzer, whose interest in it would be but for life, and she could not sell the stock. Hence this stock is excepted from her gift; and the words "available stocks" were used for that purpose, because the testatrix was just then thinking of this mining stock, and recognized its unprofitable character, and, therefore, its uselessness to Mrs. Sweitzer, and desired that in so far as her stocks were embraced in her gift to Mrs. Sweitzer they should all be available. That is, she intended to limit the stocks of the gift, and not the gift itself, to "*available* stocks;" or, in other words, to exclude stocks not available. It is as if she had written "the rest" or nine tenths "of all I possess," except my unprofitable stocks, I bequeath to my sister, Charlotte, etc., meaning thereby to limit the quantity of the gift to nine tenths and

the quality thereof to that which would be useful and profitable, of her personal estate. Or, a somewhat different construction may be adopted while yet reaching the same result, by holding the words available stocks to be but a defective enumeration of what is embraced in the gift. At all events, I feel satisfied that by this clause of her will the testatrix intended to give Mrs. Sweitzer all her personal estate, not otherwise specifically disposed of, to the extent of nine tenths of the whole, the mining stocks excepted. This construction gives effect to every portion of the will, disposes of all the property of the testatrix, accomplishes her evident intention, and renders the whole instrument consistent and harmonious.

It will not do to say that the testatrix intended her notes and cash for the payment of the legacies subsequently given and of debts and the expenses of administration, for she does not say so, and nowhere speaks of any debts or expenses, and undoubtedly gives one tenth of these items to charity. And it appears now, from the account filed, that none of the notes, except those of John Freyers and one of John Schwarting, have been collected, and that a large part of the money expended in the settlement of the estate came from dividends on stocks and interest on bonds and notes. But it was evidently the intent of the testatrix that subsequent legacies should come out of the nine tenths of Mrs. Sweitzer, which she does not deny, and, consequently, the gift to Rev. Hayden must be so deducted. As that sum, less the collateral inheritance tax thereon, has already been paid and credit therefor taken in the account, it should now be added to the fund for distribution in order to ascertain the correct shares of the heirs, otherwise they would be paying a portion thereof. Mrs. Sweitzer does not claim as a general residuary legatee, so as to take all not effectually disposed of by the will; and she therefore does not contest the right of the heirs to the one tenth given to charity, which bequest failed by reason of non-compliance with the provisions of the act of April 26, 1855, the will not having been attested by two credible and disinterested witnesses.

There is no such ambiguity in the will as demands or permits the introduction of parol evidence, and the auditor properly excluded it from consideration.

Entertaining, then, the views above expressed, it follows

Arguments.

that all the exceptions filed by the heirs, and the second exception on the part of the legatee, must be dismissed, and that the first and third exceptions filed by the legatee will be sustained, and the distribution reported by the auditor corrected accordingly.

—A final decree was then entered awarding to Nelson B. Sweitzer and Mary H. Sweitzer, executrix, each the one twentieth of the cash, notes, United States bonds, and corporate stocks and bonds, to wit, $1,252.14, subject to the collateral-inheritance tax; and to Mrs. Charlotte C. Sweitzer, for life, the nine tenths of the same items, to wit, $22,038.59, subject also to said tax.[4]   Whereupon, Nelson B. Sweitzer and Mary H. Sweitzer, executrix, took this appeal, specifying that the court erred:

1–3. In dismissing their several exceptions to the auditor's report.[1 to 3]

4. In making the decree of July 19, 1890.[4]

5. In not awarding to the exceptants the notes shown in the account, the nine United States bonds, and the eight Monongahela Nav. Co. bonds.

*Mr. W. G. Guiler* (with him *Mr. George Shiras, Jr.,* and *Mr. C. C. Dickey*), for the appellants.

Counsel cited: Howe's App., 126 Pa. 233; Rupp v. Eberly, 79 Pa. 141; Bender v. Dietrick, 7 W. & S. 284; Baker's App., 115 Pa. 590;—Hancock's App., 112 Pa. 532; Weidman's App., 42 Leg. Int. 338; Wigram on Wills, Rule II., 12–19; Schouler on Wills, 614;—Finney's App., 113 Pa. 11; Ivins's App., 106 Pa. 176; Varner's App., 87 Pa. 427; France's Est., 75 Pa. 220; Hoffner v. Wynkoop, 97 Pa. 130; Smith's App., 23 Pa. 9; Grim's App., 89 Pa. 333; Fitzwater's App., 94 Pa. 141; Stehman's App., 45 Pa. 398; Minter's App., 40 Pa. 111; Horwitz v. Norris, 60 Pa. 261; McIntyre v. Ramsey, 23 Pa. 317; Cowles v. Cowles, 53 Pa. 175; French v. McIlhenny, 2 Binn. 13;—Ryall v. Bell, 8 Term R. 579; Morrell v. Fisher, 4 Exch. 591; Delamater's Est., 1 Wh. 362; Brisben's App., 70 Pa. 405; Whelen's App., 70 Pa. 410; Doebler's App., 64 Pa. 15; Clark v. Scott, 67 Pa. 446.

*Mr. T. C. Lazear* (with him *Mr. C. P. Orr*), for the appellee.

Counsel cited: Mission Boards' App., 91 Pa. 507; Miller's App., 113 Pa. 459; Raudenbach's App., 87 Pa. 51;—Seibert v. Wise, 70 Pa. 147; Oswald v. Kopp, 26 Pa. 516; Theobald on Wills, 99; West v. Lawsday, 11 H. L. 375;—Best v. Hammond, 55 Pa. 409; Marshall's App., 2 Pa. 388; Barr's Est., 2 Pa. 428; Rewalt v. Ulrich, 23 Pa. 391; Postlethwaite's App., 68 Pa. 477.

PER CURIAM:

The decree in this case is affirmed upon the opinion of the learned judge of the Orphans' Court, and the appeal dismissed at the costs of the appellants.

———————◄●►———————

# S. S. CRAWFORD ET AL. v. S. THOMPSON ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 11, 1891—Decided May 25, 1891.

(*a*) A wife received $2,500 from her father's estate in 1842. In 1863, land was purchased for $6,300, under articles and a deed both made in the name of her husband, who died in 1884, still holding the legal title. Plaintiffs in ejectment, brought in 1887, claimed as heirs at law of the husband; defendant, under a resulting trust in the wife:

1. In such case, to establish a resulting trust in the wife, it should appear by clear proof that her money went into the land at the inception of her husband's title; that the purchase was made by her or for her account, and that the placing of the title in her husband was in violation of an agreement that the deed was to be made to her.

2. Proof of mere casual declarations of the husband, made after the purchase, that his wife's money, received prior to the act of 1848, went into the land and that it belonged to her, were insufficient to disturb a record title of such long standing; whether the resulting trust alleged was barred by § 6, act of April 22, 1856, P. L. 533, not decided.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 62 January Term 1891, Sup. Ct.; court below, No. 142 June Term 1887, C. P.