## Northam Estate

*Edmund Jones,* for accountant.
*Malcolm B. Petrikin,* for resduary legatees.
*David E. Auerbach,* for objectors.
*Donald M. McCurdy,* for Commonwealth.

VAN RODEN, P. J., May 23, 1966.—. . . This case presents the interesting question whether additional shares of a common stock received by testatrix as a result of stock splits occuring after preparation of her will inure to the benefit of the residuary legatees or pass as though decedent had died intestate with respect to such additional shares of stock. In Fetters Estate, 40 D. & C. 2d 77, this court ruled that such additional shares do not pass to general legatees of designated numbers of shares of the stock which split, on the theory that, since the splits occurred some time before decedent's death and decedent could have been aware of the same, the will could have been revised to pass the increased number of shares to such general legatees, if that had been decedent's intention. In the present case, the problem of interpretation is created by item tenth of decedent's handwritten will. That item reads as follows:

"I direct that the residue of my estate consisting of cash in the following Banks:

"Philadelphia National Bank

"Delaware County National Bank

"and the following stocks:

"Penroad [sic] Corporation stock—30 shs.

"American T. & T.—28 shs.

"Penna. R. R. Co.—43 shs.

"Scott Paper Co.—468 shs.

"be turned into cash and distributed among the following:

"Womens Auxiliary—Y. M. C. A.

"First Baptist Church".

When decedent drew her will on October 16, 1956, she possessed 468 shares of Scott Paper Company stock; 28 shares of American Telephone and Telegraph stock; 30 shares of Pennroad Corporation stock; and 43 shares of Pennsylvania Railroad Company stock. 220 shares of the common stock of Scott Paper Company were bequeathed to designated individuals, and the balance of decedent's shares were bequeathed to the residuary legatees. However, the will contains an error in that decedent bequeathed 468 shares of common stock of Scott Paper Company to the residuary legatees, apparently overlooking her previous bequests of 220 shares of such stock.

Subsequent to the execution of her will, but prior to her death, decedent, as a result of a three for one stock split in December 1961, received 1,404 shares of the common stock of Scott Paper Company, which shares she possessed at the time of her death in 1965. Subsequent to the date of her will, and prior to her death, decedent, as a result of a three for one stock split on April 24, 1959, and a two for one stock split on June 1, 1964, possessed 168 shares of American Telephone and Telegraph stock, which she possessed at the time of her death.

Thus, decedent received 936 additional shares of the common stock of Scott Paper Company and an additional 140 shares of the common stock of American Telephone and Telegraph Company as a result of the aforesaid stock splits. These additional shares she possessed at the time of her death.

The accountant herein contends that the additional shares should pass to the residuary legatees. However, some of the general legatees of stock who, in the ab-

sence of decedent's will, would also have been decedent's intestate heirs (the McMorran family), by counsel, assert that the residuary legatees should receive no more than the number of shares referred to in item tenth of decedent's will. They further contend that the additional shares received as a result of the stock splits should pass to them as the persons who would have been decedent's intestate heirs.

Although it is the rule that where decedent was ignorant of the existence of an asset at the time of her death and where that asset differs in kind from the types of assets listed in the residuary clause, such assets will not pass under the residuary clause, but will pass as though there had been an intestacy (see Howe's Appeal, 126 Pa. 233 (1889), and Bigony Estate, 397 Pa. 102 (1959)) ; nevertheless, it is equally well settled that where there is a gift of the residue of an estate followed by an enumeration of items of property intended to be included therein, such enumeration does not restrict the gift to such items: Sweitzer's Estate, 142 Pa. 541 (1891), and Williams v. Brice, 201 Pa. 595 (1902).

In the Bigony Estate, the court pointed out that it was confronted by two competing presumptions: First, that a will should not be presumed to disinherit an heir, and, second, that any ambiguity in a residuary clause is to be resolved to avoid an intestacy, it being the assumption that a testatrix intends to dispose of her entire estate. Faced with these conflicting presumptions, and in light of the fact that the assets at issue differed in kind from the assets described in the residuary clause, the court in Bigony Estate interpreted the will to create an intestacy as to such assets and thereby passed a portion of the estate to heirs who, but for such interpretation, would have been disinherited. In the present case, the court is not presented with the same competing presumptions, since if ac-

countant's interpretation is adopted, no heirs will be disinherited. The heirs simply receive a smaller share of decedent's estate than they would if objectors' position were adopted. Accordingly, since it is presumed that decedent knew of the existence of the assets for some time prior to her death and since the assets are of the kind mentioned in the residuary clause, it is the ruling of this court, in light of the controlling presumption that a will is to be interpreted to avoid an intestacy, that the additional shares of the common stock of Scott Paper Company and American Telephone and Telegraph Company pass under item tenth of decedent's will to the Womens Auxiliary of YMCA and the First Baptist Church. . . .