## Dowdel *against* Hamm.

2w 61
159 220

An assignment to a trustee, for the benefit of creditors, of the debtor's "goods, chattels and effects," vests in the trustee such a right to the debtor's *choses in action,* as will enable him to control a *capias ad satisfaciendum* issued upon a judgment for the same; and if such control be exercised, so as to induce the sheriff to execute his process in any other than a legal manner, the consequences of loss will fall upon the plaintiff, and not upon the sheriff.

A legal interpretation given to the words " goods," " chattels," " effects," and " *choses in action,*" when used in deeds and wills.

ERROR to *Adams* county.

This was an issue directed by the common pleas of Adams county, in which Peter Hamm was made plaintiff, and Michael Dowdel, sheriff of York county, defendant, to try the liability of the defendant for the amount of a *capias ad satisfaciendum* directed to him, under the following facts.

Previously to 1824, Jacob Hamm was indebted to Peter Hamm for money which, as security in a bond, he had paid for him, and to recover which a suit was pending. On the 17th of February 1824, Peter Hamm executed the following assignment.

" Know all men by these presents, that whereas I, Peter Hamm, of Codorus township, York county, Pennsylvania, have, by sundry losses and misfortunes, become unable to pay my just debts, and *being willing to assign* ALL *my goods, chattels and effects* for the use of my creditors, do hereby grant, bargain, sell, assign, transfer and set over, and by these presents, for and in consideration of the premises, and also for the sum of 5 dollars lawful money to me in hand paid by Peter Rider and Michael Miller of said county, have granted, bargained, sold, transferred, assigned and set over into the said Peter Rider and Michael Miller, their heirs and assigns for ever, the following named goods and chattels, viz: two distilleries, with two stills and all the apparatus, hogsheads, cooling tubs, &c. thereunto belonging; one iron apple mill, with the appurtenances; four head of horses; thirteen head of horned cattle; one sheep; one wagon; two beds with bedsteads; two ploughs; two harrows; one winnowing mill; two tables; eight hogs; bonds and notes; together with all and singular my other farming utensils, household and kitchen furniture, and

[Dowdel v. Hamm.]

other articles of furniture, goods and chattels and effects, which I now-own and possess, excepting only thereout so much as is allowed unto insolvent debtors, under the insolvent laws of this state.    To have and to hold the same unto the said Peter Rider and Michael Miller, or the survivor of them, or his or their heirs and assigns for ever; upon trust that they the said Peter Rider and Michael Miller, or the survivor of them, shall and do with all convenient speed proceed to sell either at public or private sale, for cash or on credit, as the said Peter Rider and Michael Miller, or the survivor of them, may deem most advantageous, and with the moneys arising therefrom to pay themselves for their reasonable costs, charges and expenses for execution of their trust, and next to pay off the different executions or *fieri facias's* levied upon such goods and chattels and effects, if so much there be then remaining, and after payment of said items, if any thing be then yet remaining, to apply the same toward the payment and satisfaction of other judgments now entered against me in the court of common pleas of York county aforesaid, so far as the same may reach, according to priority of entry of the same according to law; and if, after fulfilment of the trusts aforesaid, a balance be then yet remaining, to pay the same to me or my lawful representatives.

"PETER HAMM, [L. S.]."

On the 8th of March 1824, a judgment was rendered in the suit of Peter Hamm against Jacob Hamm, and a *capias ad satisfaciendum* was issued to November term 1824, and put into the hands of Michael Dowdel the defendant in this suit, upon which he made this return, "arrested the defendant and had him in execution, and afterwards discharged him out of custody by the direction of Michael Miller, for whose use the writ was sued out."    The proof was, that Michael Miller did give direction to the sheriff in the execution of the writ, in consequence of which he discharged Jacob Hamm the defendant from custody; and the question was, whether the assignment of Peter Hamm to Peter Rider and Michael Miller, by its terms, vested in them the right to this judgment afterwards obtained against Jacob Hamm, so as to enable them to control the process in the hands of the sheriff.    The court below was of opinion that it did not, and so instructed the jury, who found a verdict for the plaintiff for 997 dollars and 39 cents, upon which a judgment was rendered, to reverse which this writ of error was sued out.

*Penrose*, for plaintiff in error.
*Stevens*, for defendant in error.

The opinion of the Court was delivered by
ROGERS, J.—This was an issue directed by the court of common pleas of Adams county, for the purpose of trying whether the defendant, who was the sheriff of York county, was liable to the plaintiff for the amount of a *capias ad satisfaciendum* put into his hands for

[Dowdel v. Hamm.]

collection, at the suit of the plaintiff's agent, Jacob Hamm. The *capias ad satisfaciendum* was executed by the deputy sheriff, who took a bond from the defendant in the execution, with condition to appear at Gettysburg, to give bail, to take the benefit of the insolvent law. The sheriff made a special return, ."that he had arrested the defendant, and afterwards discharged him out of custody, by the direction of Michael Miller, for whose use the writ was sued out." It is in substance an action against the sheriff for a voluntary escape, on final process. It is clear, as the court instructed the jury, that when a *capias ad satisfaciendum* is put into the hands of the sheriff, who arrests the defendant, he cannot discharge him without the authority of the plaintiff; nor can he take bail for his appearance, without rendering himself liable for the debt. But on the other hand, if the plaintiff in the execution, or his agent, direct the writ to be executed in a particular way, and the sheriff obeys that direction, as he is bound to do, the sheriff would be relieved from all responsibility. The loss, if any, would be the consequence of his own mistake, and would, as is just, fall on him, and not on the sheriff, who was but the innocent instrument of his will. These being admitted principles of law, the defendant took two grounds of defence, one of which only it will be necessary to examine. He contended, that on the 17th of February 1824, Peter Hamm, the plaintiff, executed a deed of assignment to Michael Miller and Peter Rider, embracing the money due from Jacob Hamm to him, and that by virtue of that deed of assignment, Michael Miller had a right to control the execution of the writ of *capias ad satisfaciendum*; that he did in fact control its execution, by being present with the deputy sheriff at the time the bond was taken, and by directing him what course he should pursue. If the facts were, as is stated, then it is plain that the plaintiff was not entitled to recover; and this leads to the inquiry, whether the court erred in restraining the assignment referred to. This, it must be observed, is an assignment for the benefit of creditors; and as such, should receive a fair and liberal construction. It is a rule, that words of equivocal import should be taken most strongly against the grantor. The assignment begins : " That whereas I, Peter Hamm, &c. have by sundry losses and misfortunes become unable to pay my just debts, and being willing to assign *all my goods, chattels and effects,* for the use of my creditors, do hereby grant," &c. The grantor then specifies the following named goods and chattels, viz., " two distilleries, with two stills, and all the apparatus, hogsheads, cooling tubs, thereunto belonging ; an iron apple mill, with the appurtenances ; four head of horses ; thirteen head of horned cattle ; one sheep ; one wagon ; two beds, with bedsteads ; two ploughs ; two harrows ; one winnowing mill ; two tables ; eight hogs; *bonds and notes;* together with all and singular my other farming utensils, household and kitchen furniture ; *goods, and chattels and effects,* which I now own and possess ; excepting only thereout so much 'as is allowed unto insolvent debtors, under the insolvent laws of this state." It

appears clear to me, that the grantor intended to convey all his personal property, of whatever description. He seems to be particular in expressing such intention by the general words used by him in the commencement of the assignment. And for fear the enumeration of the particular articles should control that intent, he is careful to guard against such effect, by inserting that he conveys, together with the same, "all and singular, the other farming utensils; household and kitchen furniture, and other articles of furniture; goods, chattels and effects which he owns and possesses;" except as is therein specially exempted. Nor does the latter clause of the assignment destroy this view of the case. It is said, that he directs his assignees to sell the goods and chattels, and apply the proceeds to the payment of executions, &c. And from this counsel infer, that as this demand or debt could not be sold, it could not be the intention of the parties to include it. This argument is rather specious than solid. It proves too much. Bonds and notes are certainly assigned, although these in strictness are not the subject of sale. The assignment is not skilfully drawn; but enough appears, from which the meaning of the parties may be collected; and this is all the law requires. The debt arose from the payment of a bond, in which Peter Hamm was the surety of Jacob Hamm; a meritorious cause of action, in which the plaintiff could not fail to recover. It was a fund which the assignee might well intend to apply to the benefit of his creditors. It is unnecessary to say, whether equity would view this as a debt due on bond, and as such, included under the term *bonds*, which are expressly assigned. It will be in time to decide this point when the cause turns upon it. It may be sufficient to observe, that although in equity a surety who has paid the debt of his principal is entitled to stand in the place of the creditor, as to all securities for the debt held or acquired by the creditor, and to have the same benefit from them; yet it is difficult to suppose, that by the appellation of bonds, the debt in question passed to the assignees. We decide the case upon other parts of the deed.

The clauses upon which the plaintiff in error mainly relies, are those in the commencement of the assignment, and the clause in the deed where the assignor, after enumerating particular articles, proceeds to convey other articles of furniture, goods and chattels and effects, which he owned and possessed. "Other articles" is as strong an expression of intention, as if the grantor had conveyed "all other articles;" for if a man grant *omnia bona et cattalla sua*, all his goods and chattels, real and personal, pass. 2 *Roll. Abr.* 58, *l.* 17. So if he grant *bona sua*, without saying *omnia*. 2 *Roll.* 58, *l.* 17. Sir *William Blackstone*, in his *Commentaries, second book, page* 383, appears to consider that the term *chattels* comprehends all personal property, except what is denominated real estate. It is expressly so in the Norman Code, where it is put in opposition to a heritage or fief, which, according to us, is a real estate. The consequence of which, as deduced by the learned commentator, is, that in both laws a

[Dowdel v. Hamm.]

chattel is whatever comes under the appellation of personal estate. The word *goods* is *nomen generalissimum*, and when construed in the abstract, the term will embrace all the personal estate of the testator, as bonds, notes, money, plate, furniture, &c. And such is its effect by the canon law as well as the common law, which seems to have adopted the former. 1 *Atk.* 180, 182; 3 *Atk.* 62; Moore *v.* Moore, 1 *Bro. C. C.* 123. Such is the effect of the word " goods," in all cases where the bequest is of " goods" generally. And this proposition is only untrue where the testator, instead of bequeathing his goods generally, restricts the import of the words by limiting its effect to those in a particular situation, as by specifically bequeathing all his goods in the house of A; in such, and in the like instances coming within the same reason, since the goods given are connected with a subject in its nature showing the sense in which the term was used by the testator, there the term will be controlled and limited in its signification. 1 *Roper on Legacies* 189. The effect of the " goods and chattels" is the same in a deed of assignment for the benefit of creditors, unless there is something in the instrument indicative of an intention to restrict the general import of the words. The intention of the parties governs as well in deeds as wills, unless where the import of the deed is restrained by well defined technical rules of construction. The term " goods and chattels" includes *choses in action,* as well as those in possession. 12 *Co.* 1; 1 *Atk.* 182. The term " chattels" is more comprehensive than " goods," and will include animate as well as inanimate property; and so of the term " effects;" for the term " goods" will not embrace fixtures, but the word " effects" may. 7 *Taunt.* 188; 4 *J. B. Moore* 73; 4 *B. & A.* 206. The term " effects, both real and personal," in a will, passes freehold estate, and all chattels, real and personal. 2 *Chitty's Black.* in the note. *Toller,* in his *Law of Executors,* uses the term " effects," as including *choses in action.* In his third chapter he treats of the interest of the executors in the testator's " *choses in action.*" He speaks of the testator's " effects" which were not in his possession at the time of his death; and in this class he treats of *choses,* or things, *in action.* And we come to the same result if we adopt the popular signification of the term. It means such funds in the hands of the executor, as may be made effective or available for payment of debts or legacies.

Judgment reversed and a *venire de novo* awarded.