## Hofius *versus* Hofius.

1. No presumption of an intent to die intestate as to any part of his estate is to be made when the words of the testator will carry the whole.

2. Testator died seised of three farms, of one hundred, one hundred and thirty and forty acres respectively. By his will, after making various specific devises and bequests of real and personal property to his wife, children and grandchildren, including the two largest farms to his sons, subject to a life-estate in his widow, he provided as follows: " The residue of my estate, after paying all just debts and the above bequests, it is my will that said residue shall be put out at interest by my executors, with ample security, and the interest thereon paid annually to my said wife, Maria, during her natural life, or so long as she shall remain my widow; and in one year after her death be equally divided betwixt my children, Laura and Julia, the two youngest heirs. And I hereby appoint my said wife Maria and son George executors of this my last will and testament." *Held*, reversing the court below, that the forty acre farm was included in said residue.

November 26th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Mercer county:* Of October and November Term 1879, No. 376.

Case stated for the opinion of the court, where John J. Hofius was plaintiff, and Maria, Laura and Julia Hofius, by their guardian, C. G. Hofius, were defendants. The facts as stated were substantially these: John Hofius died July 17th 1874, leaving a widow, nine children and eight grandchildren, the children of three deceased daughters. He died seised of three farms, one of one hundred acres in Hocking township, one of one hundred and thirty acres in Rymahoning township, and the other of forty acres in Hocking township.

It was admitted that John Hofius, after making various devises and bequests of real and personal property in his said will, made the following: " The residue of my estate, after paying all just debts and the above bequests, it is my will that said residue shall be put out at interest by my executors, with ample security, and the interest thereon paid annually to my said wife, Maria, during her natural life, or as long as she remains my widow, and in one year after her death be equally divided between my children Laura and Julia, the two youngest heirs." It was admitted that there was no specific devise or disposition made of the above-mentioned forty acres, unless it was embraced in the last clause of said will recited above.

It was contended by the plaintiff that John Hofius did not dispose of said forty acres in his will, but died intestate as to the same. On the other hand, it was contended by the defendants that the testator did dispose of the said forty acres in his said will, and that the same was embraced in the residue of his estate and

11 NORRIS—20

[Hofius *v.* Hofius.]

belongs to the said Maria for life, and to the said Laura and Julia after her death.

If the court should be of the opinion that said testator died intestate as to the forty acres, then judgment to be entered for the plaintiff. But, if of the opinion that the land was embraced in the will as recited above, then judgment for the defendants.

The court entered judgment for the plaintiff, and in an opinion, inter alia, said :

" It should not be, and never is, presumed that a testator intended to die intestate of any portion of his estate, if a contrary intention can be fairly deduced from the language of his will. Although the testator specifically devises his other two farms, he does not name or allude to these forty acres, unless he intended to embrace them in said residuary clause.

" We must presume the testator was of at least ordinary intelligence, and if so, he knew the difference between rent and the proceeds of a farm, and the interest which would or might be realized from putting the proceeds of the sale of it on interest, but he does not say it should be sold, or rented, or farmed, or used in any mode or manner. He simply says, ' the residue of my estate shall be put out at interest,' &c. Surely he understood the use of language better than to direct his executors to put a farm out at interest. Had he intended them to sell or rent it, he would have said so ; or had he intended his widow, or any of his children, to have had the use of it during her life, nothing was easier than for him to say so. We are forced to conclude either that the testator forgot the forty acres entirely, or intended them to be disposed of under the intestate laws, or that the scrivener omitted to insert in the will his disposition of them, and which omission was unnoticed by the testator when the will was read to him."

The defendants took this writ, and alleged that the court erred in entering judgment for the plaintiff.

*Samuel Griffith & Son* for plaintiffs in error.—The legal presumption is that a testator does not intend to die intestate : Raudenbach's Appeal, 6 Norris 51. A presumption of an intent to die intestate as to any part of his estate, will not be made when the words of the testator are sufficient to convey the whole estate : Id. See also Stehman *v.* Stehman, 1 Watts 466 ; Little's Appeal, 31 P. F. Smith 190. *Estate* is a comprehensive word, and conveys whatever the testator has. The *residue* of a man's estate means whatever is not specifically devised or bequeathed : Willard's Appeal, 18 P. F. Smith 327. Under this principle we contend the forty acres were included in this residue. And the fact that the will itself does not make provision for the mode or manner of carrying out the testator's intention, or that the executors have to call in the aid of the law to do so, is no argument

[Hofius *v.* Hofius.]

against the construction we claim, if the testator's intention is clear from all the will; and unless the whole will, taken together, shows clearly that it was not so intended (see Willard's Appeal, *supra,* 332), the presumption is in our favor and the *onus probandi* on our opponents. They must show from the whole will, taken together, and that clearly, that it was not the intention of the testator.

*Stranahan & Mehard,* for defendant in error.—No mention is made in the will of the forty acres of land in controversy, and the question is, does the residuary clause in the will dispose of this land? We contend that it did not, and that this piece of land was either overlooked or forgotten by the testator; or that it was to descend to his heirs equally, or in other words, that the testator died intestate as to these forty acres.

The word "estate," as used in this residuary clause, is used in a restricted and not in its general and comprehensive sense, and means the balance of his personal estate after the payment of his just debts and the pecuniary legacies. The law can give it no other meaning.

Again, this must mean the personal estate, because the executors have no control of any other to put out at interest. The will does not, by express terms, convert this land into personalty, and we contend that it does not by implication. It does not authorize the executors to sell the real estate or in any manner to manage or control it. The heir is not to be disinherited by anything less than a clearly apparent intention to pass the estate in another line of succession: Cowles *v.* Cowles, 3 P. F. Smith 175.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1880.

The learned judge of the Common Pleas truly said, "It should not be, and never is, presumed that a testator intended to die intestate of any portion of his estate, if a contrary intention can be fairly deduced from the language of his will." And he might have added, "No presumption of an intent to die intestate, as to any part of the estate, is to be made, when the words of the testator will carry the whole:" Raudenbach's Appeal, 6 Norris 51; Stewart's estate, just decided, opinion by GORDON, J. "Estate" signifies the property a person possesses, both real and personal; "property of all kinds which a person leaves to be divided at his death;" and in its more limited sense, especially property in lands. "The residue" of an estate, in testamentary language, means whatever is not specifically devised or bequeathed, and it ought to have that meaning, unless the whole will taken together shows clearly it was not so intended: Willard's Estate, 18 P. F. Smith 327. John Hofius's will contains this item: "The residue of my estate, after paying all just debts and the above bequests, it is my will

[Hofius *v.* Hofius.]

that said residue shall be put out at interest by my executors, with ample security, and the interest thereon paid annually to my said wife, Maria, during her natural life, so long as she shall remain my widow, and in one year after her death, be equally divided between my children, Laura and Julia, the two youngest heirs." "Bequest" is sometimes, though improperly, used as synonymous with devise. It may be applied to the real or personal estate, according to the intent apparent in the will: Ladd *v.* Harvey, 21 N. H. 514.

The first object of this will is, provision for the testator's wife; the last, his wife and two youngest daughters. It contains specific devises or bequests to all his children who were living, and to the heirs of those who were dead. The whole will taken together, so far from showing an intention of the testator to die intestate as to part of his estate, is a well constructed and plain disposition of all his property. It is devised and bequeathed in direct and positive terms—there is no obscurity. In the residuary clause, the words, in their technical and popular sense, carry all the estate that is left after paying his debts, devises and bequests. This disposition cannot be set aside for want of direction to convert realty into money, nor for inaccuracy of expression as to putting said residue at interest. No obstacle is in the way of carrying out the will. If need be, the land can be converted under the order and direction of the Orphans' Court. There is no room for interpretation to defeat the passing of the residue of the estate; nor is there occasion to suppose reasons for the omission to direct his executors to sell the land; but if there were, we would rather surmise that the testator made his wife one of the two executors, intending that to avoid difficulty between her and the young daughters about the use of the land.

With reference to a case cited by defendant in error, it may be remarked, it does not apply; for here, subject to the life use of the widow, the estate is given to the testator's heirs.

Judgment reversed, and now, on the case stated, judgment for defendants below.