# Reimer's Estate.   Ewing's Appeal.

[Marked to be reported.]

*Will—Intestacy—Presumption.*

No testator is presumed to die intestate as to any part of his property, if the words of the will will carry the whole.

*" Personal effects "—Personal property.*

The words " personal effects " in a will, when not restricted by the context, mean everything embraced within the description " personal property."

Testator, after providing that his debts and funeral expenses should be paid, directed " that the whole of my estate remaining shall be divided as follows: First. I give and bequeath to my brother, Andrew, any and all of my household goods, books, clothing, furniture, etc. that he may desire.  The balance of the personal effects to be divided among the children of my sister Mary." After directing his executors to accumulate rents to the amount of $5,000 for a monument, he continued: " After which I direct my real estate to be divided as follows: " Then followed six devises of real estate, which included all of the real estate.  *Held,* that the second sentence of the first clause of the will was residuary in character, and that all of the testator's personal property except the household goods, books, etc., bequeathed to his brother, should be distributed to the children of his sister Mary.

*Issue devisavit vel non—Costs.*

Costs, including counsel fees for the trial of issues devisavit vel non, cannot be charged to the estate unless it be benefited thereby.

Argued Nov. 2, 1893.   Appeal, No. 239, Oct. T., 1893, by Amos D. Ewing et al., from decree of O. C. Allegheny Co., Feb. T., 1893, No. 34, distributing estate of George Reimer, deceased.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to adjudication.

From the record it appeared that Dr. George C. Reimer died on Nov. 26, 1891, leaving a will dated Jan. 16, 1888, which provided as follows :

" I order that all my just debts and funeral expenses, also charges of probating this my will, be first fully paid and satisfied, and after the payment of the same, I direct that the whole of my estate remaining shall be divided as follows :

" First. I give and bequeath to my brother, Andrew Reimer,

any and all of my household goods, books, clothing, furniture, etc., that he may desire. The balance of the personal effects to be divided among the children of my sister, Mary Ewing.

"Second. I direct that my executors hereinafter named shall collect the rents from my real estate and place the same in some good reliable bank until such times that said rents, together with any other monies I may have remaining after paying my debts, funeral expenses, etc., as aforesaid, shall amount to the sum of five thousand dollars, and I then direct that my said executors shall take said $5,000 and use the same in the erection of a family monument on our cemetery lot, near the town of Tarentum, in Allegheny County, Pa., after which I direct my real estate to be divided as follows:

"I give and bequeath to my brother, Andrew Reimer, all my real estate and improvements situate in the Nineteenth Ward, city of Pittsburgh, and in case of his death, said property to be divided among the daughters of my sister, Mary Ewing, share and share alike.

"Second. I give and bequeath to my brother, Andrew Reimer, all that triangular piece of ground situate on the east side of Park avenue, between Auburn street and the alley in the rear of Frankstown avenue, Twenty-first Ward, Pittsburgh, Pa.

"Third. I give and bequeath to my sister, Mary Ewing, the two lots and frame house on the corner of Meadow and Ashley streets, Twenty-first Ward, Pittsburgh; also all my real estate fronting on Frankstown avenue, between Park avenue and Lowell street, in said ward, and running one hundred feet to a twenty foot alley.

"Fourth. I give and bequeath to the daughters of my sister, Mary Ewing, the house I now occupy, corner of Auburn street and Park avenue, and the lots on which it is erected, and the three double frame houses and lots fronting on Park avenue, Twenty-first Ward, Pittsburgh.

"Fifth. I give and bequeath to my nephew, Amos D. Ewing, the two double frame houses and lots situate on the north side of Auburn street, and west of Maria McFarland's property in the Twenty-first Ward, Pittsburgh.

"Sixth. I give and bequeath to my nephew, C. N. Reimer, the double frame house and lots situate on the south side of Auburn street, being Nos. 168 and 170 on said street, Twenty-first Ward, Pittsburgh.

" And I hereby nominate, constitute and appoint Andrew Reimer and Amos D. Reimer, Executors, etc."

The sixth paragraph was erased by pen and ink scrawls.

The validity of the will was attacked by the children of Aaron Reimer, a deceased brother, but was sustained by the verdict of a jury in an issue devisavit vel non.

It was alleged and not contradicted that at the date of the will testator's personal estate amounted to about $7,320.38. Between the execution of the will and testator's death some of the real estate was sold. The inventory filed after the death of testator showed that the amount of the personal estate was $23,796.54, of which amount $258.50 was the appraised value of the household goods, books, clothing, furniture, etc. The remainder consisted of cash and securities.

The opinion of the court below, after reciting the will, was as follows, by OVER, J.:

" The fund for distribution is the mortgages held by the decedent and moneys deposited by him in the bank. And the question arises as to whether, under the first paragraph of the will, it goes to the children of Mary Ewing, or, there being no general residuary clause, to the next of kin.

" Whilst the words in this will, expressing the intention of the testator to dispose of his whole estate, are to be carried down to the bequeathing clauses to illustrate his intention, they will not of themselves carry an estate or property that is clearly omitted : Rupp v. Eberly, 79 Pa. 141 ; Howe's Appeal, 126 Pa. 241. Unless then the testator intended to include his mortgages and money in bank in the ' balance of the personal effects given to the children of Mary Ewing,' they do not take the fund for distribution as legatees. He first gives the privilege to his brother Andrew of taking any and all of his household goods, books, clothing, furniture, etc., he may desire. This is followed in the same paragraph by the gift of ' the balance of the " personal effects " to the children of Mary Ewing.' He specifies the personal effects given to his brother, and it is clear that they do not include money in bank or mortgages. The gift to the children of Mary Ewing is not generally of the balance of his personal property, but of the balance of the personal effects,—referring evidently to the effects remaining after Andrew had taken all he desired.

" In the second paragraph he authorizes his executors to collect the rents of his real estate, until they, with any other moneys remaining after the payment of his debts, shall amount to $5,000, and to use this amount in erecting a monument. It is clear that the testator supposed that in this paragragh he had disposed of his money ·; and it follows that he did not have his securities or money in his mind when the first paragraph was written, and could not therefore have intended to dispose of them in it. As the fund for distribution seems to have been omitted from all the bequeathing clauses, it must be distributed under the intestate laws."

The children of Mary Ewing took this appeal.

*Errors assigned* were (1, 2) in distributing the personal property as above; (3) in declining to hear appellants in relation to and in not allowing claim of attorney's fees for services in sustaining will against contestants.

*W. B. Negley, Bruce Millar* and *Robb & Fitzsimmons* with him, for appellants.—The primary rule in the construction of all wills is to ascertain from the whole will the intent of the testator and, unless it be unlawful, to follow it; Lynn v. Downes, 1 Yeates, 518 ; Zeisweiss v. James, 63 Pa. 465 ; Provenchere's Ap., 67 Pa. 463 ; Reck's Ap., 78 Pa. 432 ; Shetz's Ap., 82 Pa. 218.

The word " effects " is of extensive import, frequently used in wills as a synonym for personal estate : Hogan v. Jackson, 1 Cowp. 304 ; Anderson's Law Dictionary, p. 392 ; 1 Jarman on Wills, 751 ; Mitchell v. Mitchell, 5 Mad. 69 ; Hearnes v. Wigginton, 6 Mad. 119 ; Dowdel v. Hamm, 2 Watts, 61 ; Howe's Ap., 126 Pa. 233 ; Sweitzer's Est., 142 Pa. 541 ; Campbell v. Prescott, 15 Ves. Jr. 500 ; 2 Wms. Exrs. 1272 ; 1 Jarman on Wills, 751.

The whole personal estate went under the first clause to testator's brother, Andrew Reimer, and to the children of his sister, Mary Ewing.

The error of the court below in the construction of the will is based on a statement of facts as they existed at the date of the testator's death, instead of the date of the will : Jacob's Est., 140 Pa. 268.

While it is undoubtedly true that as a general rule a will speaks from the death of the testator, yet it is otherwise when its language, by fair construction, indicates the contrary: 1 Redfield on Wills, 379; Clarke's Est., 82 Pa. 535.

No presumption of an intent to die intestate as to any part of the estate is to be made when the words of the testator will carry the whole: Stehman v. Stehman, 1 Watts, 466; Raudenbach's Ap., 87 Pa. 51; Bittle's Ap., 81 Pa. 190; Hofius v. Hofius, 92 Pa. 505; Appeal of the Board of Missions of the U. P. Ch., 91 Pa. 507; Rupp v. Eberly, 90 Pa. 259; Busby v. Busby, 1 Dal. 226; Cassell v. Cooke, 8 S. & R. 289.

Where the construction of a will is doubtful, the law leans in favor of an absolute rather than a defeasible estate; of a vested rather than a contingent one; of the primary rather than the secondary interest: Smith's Ap., 23 Pa. 9; Lantz v. Trusler, 37 Pa. 482; Manderson v. Lukens, 23 Pa. 31; Passmore's Ap., 23 Pa. 381; Rewalt v. Ulrich, 23 Pa. 388; Letchworth's Ap., 30 Pa. 175; Burd v. Burd, 40 Pa. 182; Womrath v. McCormick, 51 Pa. 504; Fahrney v. Holsinger, 65 Pa. 388; Braden v. Cannon, 1 Grant, 60; Fulton v. Fulton, 2 Grant, 28; Shriver v. Meyer, 19 Pa. 87; Wood v. Hills, 19 Pa. 513; Shinn v. Holmes, 25 Pa. 142.

All other debts and expenses, besides funeral expenses, were actually paid or provided for by the last decree of the court. Why then should not the court have decreed the payment of the claim for services of the attorneys in defending the will in the contest aforementioned?

*R. E. Stewart, Hudson & McCue* with him, for appellee.— Words of general description, occurring in connection with a particular enumeration of things, are limited thereby so as to comprise only things of the same kind as those particularly mentioned: Rawlings v. Jennings, 13 Ves. 39; Sutton v. Sharp, 1 Russell, *146; Wench v. Jutting, 3 Beav. 521; Newman v. Newman, 26 Beav. 220; Minor v. Dabney, 3 Rand. 191; Webster v. Wiers, 51 Conn. 569; Dole v. Johnson, 3 Allen, 364; Bills v. Putnam, 64 N. H. 554; Ennis v. Smith, 14 How. 400.

If there are no words to be found in the will which, reasonably interpreted, include a particular species of property, the prefatory words can only be considered as indicating an inten-

tion which the testator has not fulfilled: Enohin v. Wylie, 10 H. L. Cas. 1; Timewell v. Perkins, 2 Atk. 104; Steele v. Thompson, 14 S. & R. 84; Duffield v. Morris, 8 W. & S. 348; Rupp v. Eberly, 79 Pa. 141; Howe's Ap., 126 Pa. 233.

The heir is not to be disinherited by conjecture but only by express words or necessary implication: McIntyre v. Ramsey, 23 Pa. 317; Smith's Ap., 23 Pa. 9; Suplee's Ap., 16 W. N. 378; Schouler on Wills, § 479.

The will speaks from the death of testator: Act of June 4, 1879, P. L. 88.

Where there is no ambiguity in the terms of the will, a doubt, suggested by extraneous circumstances, cannot be permitted to affect its construction: Baker & Wheeler's Ap., 115 Pa. 590.

OPINION BY MR. JUSTICE GREEN, December 30, 1893:

It cannot be doubted that the testator intended to dispose of the whole of his estate. The first clause of his will is as follows, " I order that all my just debts and funeral expenses, also charges for probating this my will be first fully paid and satisfied and after the payment of the same I direct that the whole of my estate remaining shall be divided as follows." The testator then makes bequests of personalty, and thereafter devises of real estate, preceded by these words: " After which I direct my real estate to be divided as follows." Then follow six devises of specific real estate, which, it is asserted by the appellants, and is not denied by the appellees, comprise the whole of the real estate of the testator. It is manifest, therefore, that the testator was perfectly conscious of the distinction between personal and real estate as subjects of testamentary disposition, and that he fully intended to dispose, by his will in question, both of all his personal estate and all his real estate.

The present contention arises upon the meaning of one of the clauses disposing of his personal estate. It is in the following words: " First. I give and bequeath to my brother Andrew Reimer any and all of my household goods, books, clothing, furniture, etc., that he may desire. The balance of the personal effects to be divided among the children of my sister, Mary Ewing." It is too plain for argument that this was an absolute bequest to Andrew of all the chattels named, because he was at liberty to take all of them if he so desired. If he so

desired and took them all, there would be none left for the children of Mary Ewing to take, and the bequest to them would be nugatory for want of a subject-matter upon which to operate, if the contention of the appellees is correct. The controversy is upon the distribution of a considerable balance of personal estate which consisted of money and securities. The learned court below decided, and the appellees contend, that the children of Mary Ewing could only take the "balance," if there was any, of the class of chattels given to Andrew, and could take no part of the money and securities. If this is correct, it follows that if Andrew took all the chattels of the class named Mary's children would get no part of the personal estate under the will. And it follows, also, that in order to produce this result it must be held that the testator died intestate as to all of his personal estate, other than the chattels mentioned in the bequest to Andrew. It is also alleged without contradiction that the testator's personal estate, according to the inventory, amounted to $23,796.54, of which the household goods, books, clothing and furniture were appraised at $258.50, all of which went to Andrew Reimer under the first clause of the will. The remainder consisted of cash and securities, and as to this the court below held that the testator died intestate, and made distribution of the whole of the balance to the next of kin. The fund was claimed by the children of Mary Ewing under the bequest to them of "the balance of the personal effects," in the first clause of the will.

It is a perfectly well established rule in the construction of wills in Pennsylvania, that no testator is presumed to die intestate as to any part of his property, if the words of the will will carry the whole. In the case of the Appeal of the Boards of Missions, 91 Pa. 507, Mr. Justice GORDON, after reviewing the provisions of the will in question, said: "From all this it would appear that the testator did not intend to die intestate as to any portion of his property, real or personal, and this intention must govern, unless there is something in the devise itself which forces us to a different conclusion; for it is a rule long and well settled that a will must be so construed as to avoid a partial intestacy unless the contrary be unavoidable." Applying this doctrine to the facts of that case, this court held that the residuary clause of that will, which directed the executors

to sell all the rest and residue of his estate and pay the proceeds to a certain legatee, included money which had accrued as dividends on bank stocks and was not a subject of sale. In the case of Hofius v. Hofius, 92 Pa. 305, it was said by Mr. Justice TRUNKEY, delivering the opinion of the court: " The learned judge of the common pleas truly said, 'It should not be and never is presumed that a testator intended to die intestate of any portion of his estate, if a contrary intention can be fairly deduced from the language of his will.' And he might have added, ' no presumption of an intent to die intestate as to any part of the estate, is to be made when the words of the testator will carry the whole,' Raudenbach's Appeal, 6 Nor. 51." It was held that a residuary clause which directed that the residue of the estate should be put out at interest by the executors with ample security, and the interest thereof should be paid to the widow during her life, and should be equally divided after her death between two of the testator's children, embraced a tract of forty acres of land which was not otherwise disposed of.

In Jacobs' Estate, 140 Pa. 268, it was held that a residuary clause in the following words, " The remainder and residue of my money I give and bequeath to the hospital of the Protestant Episcopal Church in Philadelphia," carried certain real estate with it to the residuary legatee, not otherwise disposed of. The decision was put upon the ground that the testatrix did not intend to die intestate, and that she did not intend her heirs to have any part of her estate.

In Sweitzer's Estate, 142 Pa. 541, we held that a bequest in the following words, " The rest, or nine tenths of my available stocks I bequeath to my sister Charlotte during her lifetime, after her death to be divided equally between the children of my brother," carried with it cash, notes, shares of corporate stocks, United States four per cent bonds and corporate bonds or loans of a navigation company. This result was reached by the application of the same rule we are considering, and the various securities above mentioned, not having been otherwise disposed of, and the testatrix having said, " I believe it my duty to dispose of my whole estate, . . . I therefore make this my last will," etc., we decided that the clause of the will above mentioned should be construed as a residuary clause in favor of the legatee named therein.

These illustrations of the rule might be infinitely multiplied, but the foregoing are sufficient, and it is only necessary to examine briefly the language of the will to make the application.

The decision of the court below turned chiefly upon the meaning of the word "effects," in the first clause. The learned judge held that the whole right of the children of Mary Ewing was to take the remainder of the specific chattels which Andrew Reimer did not take. Apart from the consideration that this ruling would produce an unintended intestacy as to the great bulk of the estate of the testator, it is clear from the authorities that the word "effects" has a much larger signification than was accorded to it. Thus in 2 Williams on Executors, p. 1015, it is thus stated: "The word 'goods' is nomen generalissimum and when construed in the abstract will comprehend all the personal estate of the testator, as stock, bonds, notes, money, plate, furniture, etc. And a bequest of all the testator's 'chattels' will have the same effect as a bequest of all his 'goods and chattels.' So the word 'effects,' standing alone, will pass the whole of the testator's residuary estate," citing a number of cases. Of course this meaning may be restricted by residuary words, but in their absence they have the enlarged significance stated.

In Hogan v. Jackson, 1 Cowper, 299, Lord MANSFIELD said: "I take 'effects' to be synonymous to 'worldly substance,' which means whatever can be turned to value, and therefore that real and personal effects mean all a man's property." To this reference may be added Campbell v. Prescott, 15 Ves. Jr. 500a, in which it was held that the word "effects" in a will was equivalent to "property" or "worldly substance." In our own case of Dowdel v. Hamm, 2 Watts, 61, ROGERS, J., said: "The term 'goods and chattels' includes choses in action as well as those in possession: 12 Co. 1; 1 Atk. 182. The term 'chattels' is more comprehensive than 'goods,' and will include animate as well as inanimate property; and so of the term 'effects;' for the term 'goods' will not embrace fixtures, but the term 'effects' may. 7 Taunt. 188; 4 J. B. Moore, 73; 4 B. & A. 206. The term 'effects, both real and personal,' in a will passes freehold estate, and all chattels real and personal: 2 Chitty's Black. in the note. Toller, in his Law of Executors, uses the term 'effects' as including choses in action. . . . And

we come to the same result if we adopt the popular significa-
tion of the term.    It means such funds in the hands of the ex-
ecutor as may be made effective or available for payment of
debts or legacies."

Recurring to the language of the will in the present case we
fail to discover any words restrictive of the general meaning of
the word " effects."    The bequest is " The balance of the per-
sonal effects to be divided among the children of my sister
Mary Ewing."    The court below said that this meant the bal-
ance of the specific chattels bequeathed to Andrew Reimer
which he did not desire.    By what authority is such an infer-
ence drawn?    The will does not say so.    It gives Andrew the
right to take all of those specific articles, and, assuming that
Andrew would take all that he was entitled to take, which is
but ordinary human nature, there would be no balance for
Mary's children to take.    If the testator had meant to restrict
their right to only that kind of goods, or chattels or effects, he
would have so provided that there should be such a balance.
But on the contrary he so provides that the children can get
none of those effects except what Andrew chooses to give them,
and then their title would be not under the will, but under
Andrew.    Such a construction leads to the absurd result that
the will has no meaning at all in that view, because Andrew
could give them a portion of the effects with or without the
will.

But, independently of this consideration, the plain meaning
of the words, just as they stand, does not invite or permit any
restricted meaning to the bequest.    The first sentence of the
first clause simply gives to Andrew certain specific chattels and
then stops, thus : " I give and bequeath to my brother, An-
drew Reimer, any and all of my household goods, books, cloth-
ing, furniture, etc., that he may desire."    This is a simple gift
of all the articles mentioned.    If Andrew does not desire some
of them, those not taken become a part of the residuary personal
estate of the testator and will pass by any residuary bequest.
Then in immediate connection with the first sentence of the
clause the testator provides thus : " The balance of the personal
effects to be divided among the children of my sister, Mary
Ewing."    Whose " personal effects?"    Obviously the testa-
tor's.    What are his personal effects?    Necessarily everything

embraced within the description " personal property." This is
the language of all the authorities in all cases where the nat-
ural meaning of the word " effects " is not restricted by the
context, and here there is no such restriction. " The balance
of the personal effects " of the testator means all of his personal
effects, except such particular personal effects of a designated
class as may have been taken by Andrew under the first sen-
tence of the first clause of the will. To us this meaning seems
perfectly simple. It is in entire accord with the authorities, it
effectuates the plain intent of the testator, and it prevents him
from dying intestate as to a large part of his estate the whole
of which he has expressly declared his intention to dispose of.
We are clearly of opinion that the second sentence of the first
clause of the will is residuary in its character and was intended
as such by the testator, and that the fund for distribution should
be given to the children of Mary Ewing. There is nothing in
the provision for the monument which in the least degree con-
flicts with this view. Of course it was to be paid for out of any
moneys in the hands of the executors.

There is not the slightest merit in the third assignment relat-
ing to the payment of attorney's fees for defending the will.
It has been decided over and over again that the costs, includ-
ing counsel fees, for the trial of issues devisavit vel non cannot
be charged to the estate unless it is benefited thereby: Kop-
penhafer v. Isaacs, 7 Watts, 170; Mumper's Appeal, 3 W. &
S. 441; Scott's Estate, 9 W. & S. 98; Yerkes's Appeal, 99
Pa. 401.

But if this were not so we cannot discover that any such
question was raised in the court below. The very brief appen-
dix that is published does not show that any such question was
raised. The opinion of the court makes no allusion to it, and
there is no credit claimed by the accountant for any such pay-
ment.

The decree of the orphans' court is reversed at the cost of
the appellees, and the record is remitted with instructions to
make distribution of the fund in accordance with this opinion.

DISSENTING OPINION BY MR. JUSTICE DEAN :

Dr. George G. Reimer, owing some debts, mainly unpaid
taxes, and being owner of very valuable improved real estate

consisting of houses and lots in Pittsburgh, and also having personalty to the value of $7,320.38, made up of money in bank, $5,617.88, cash in house, money payable to him on mortgages and other evidences of debt, on the second day of February, 1888, made his will. He was a single man, but had a number of collateral, near relatives. Seventeen days before this, he had been stricken with paralysis, and doubtless prompted by the fear that the disease would soon end his life undertook in this form to dispose of his estate. However, he did not die, but lived until November 26, 1891, nearly four years afterwards.

In the meantime, he recovered his health sufficiently to give attention to his business affairs. So far as the will purported to dispose of his personal property, no change was made in it. The sixth paragraph, a devise of a house and two lots in the 22d ward of Pittsburgh to his nephew, C. N. Reimer, was cancelled by scrawling it over with pen and ink. Considerable change in the interval was made in the character of the property; he sold a lot in the 21st ward devised to his brother Andrew; also, two lots in the same ward and a piece of ground on Frankstown avenue devised to his sister Mary; he made no new purchases of real estate. By the accumulation of income and the purchase money of the land sold, his personalty at his death, instead of the $7,320.38 at the date of the will, was $21,049.28. The appellants claimed that under the first item of the will this passed to them, the children of Mary Ewing; the appellees resisted this, and alleged, that as to this portion of his estate the testator died intestate, and such was the opinion of the learned judge of the orphans' court; so he, after deducting cost of a family monument and collateral inheritance tax, distributed the balance, $15,224.87, to the surviving brother, Andrew, and the children of deceased brothers and sisters. From that decree of distribution the children of Mary Ewing appealed, and their appeal is sustained by this court. Notwithstanding the very able opinion of my brother GREEN, I cannot concur in the judgment.

The contention is determined by the interpretation to be given to the first paragraph of the will, which is as follows:

" First. I give and bequeath to my brother, Andrew Reimer, any and all of my household goods, books, clothing, furniture,

etc., that he may desire.  The balance of the personal effects
to be divided among the children of my sister Mary Ewing."
This is preceded by the usual direction for payment of debts
and funeral expenses, and then these words, "And after pay-
ment of the same, I direct that the whole of my estate remain-
ing shall be divided as follows : "  Then comes the first para-
graph already quoted.  This is followed by the second, which
reads. thus :

"I direct that my executors hereinafter named shall collect
the rents from my real estate, and place the same in some good
reliable bank until such times that said rents, together with
any other moneys I may have remaining after paying my debts,
funeral expenses, etc., as aforesaid, shall amount to the sum of
five thousand dollars ($5,000), and I then direct that my said
executors shall take said five thousand dollars and use the
same in the erection of a family monument on our cemetery
lot near the town of Tarentum in Allegheny County, Pa., after
which I direct my real estate to be divided as follows : "  Then
follow six separate devises of real estate, which, it is conceded,
included all he owned at the date of the will and, because of
sales in the interval, more than at the date of his death.

It is argued by appellant, that the words, "the balance of
the personal effects are to be divided among the children of
my sister Mary Ewing," are to be understood in the same legal
sense as if he had said " The balance of my personalty," or " all
that remains of my personal estate," or similar phrases, which
necessarily import personal estate as distinguished from real
estate.  My first impression was that the court below had
fallen into error in its interpretation of this first paragraph ;
but a careful scrutiny of the whole will, having before me the
subjects of the bequests and devises, constrains me to hold
otherwise.

In interpreting this bequest, we start with the primary rule,
which determines the construction of all wills, that the intent
of the testator as ascertained from the whole will must be car-
ried out.  It is true, as argued, that the words, " The balance
of the personal effects," might be descriptive of and include all
and every kind of personal property, and pass the money here
in dispute ; it is often used in wills as a synonym for personal
estate, and, as the very many adjudicated cases cited, both from

the courts of England and the United States, show, has been held to be sufficiently significant and comprehensive to pass plate, jewelry, heir looms, evidences of debt, money, and all property not realty ; but in giving the word " effects " such meaning, in every instance, the court was impelled to do so because the testator had in no way indicated an intention to limit its scope to a particular kind or to less than the whole of the personalty. In not a single case that I have been able to discover, has the rule laid down in 1 Jarman on Wills, 751, been departed from, that the word " will comprise the entire personal estate of the testator, unless restrained by the context within narrower limits." Controlled by that rule here, what was the intent of the testator when he adopted, as the expression of his intention, the word " effects." He has before his mind the objects of his bounty, his brother Andrew and the children of his sister Mary Ewing ; the first subject of disposal occurring to him is the property in his house ; that before his eyes. As to this, he says : " I give and bequeath to my brother, Andrew Reimer, any and all of my household goods, books, clothing, furniture, etc., that he may desire." This, in the mind of the testator, obviously, whatever may have been Andrew's right, is not a gift of all the household goods, books, clothing, furniture, etc., but only so much as he may desire ; there is a right of choice in the brother, which, when exercised by selection, may dispose of only part of the property. As the bequest in the mind of the testator does not necessarily pass all the " household goods, books, furniture, etc., to Andrew, the next thought is, what shall be done with that which he does not choose to take ? The testator immediately answers by continuing to speak in the same paragraph thus : " The balance of the personal effects to be divided among the children of my sister Mary Ewing." Then further, the fact that the personal effects from which his brother is to choose are mentioned in detail, while no single article of the "effects" given to the children is mentioned makes the gift to them accord with the idea that the intention was to give to them the balance of the personal effects not selected by his brother. Again, the juxtaposition of the two sentences in the same paragraph, their natural association in thought, all indicate clearly that the word " effects " was used in a restrictive sense.

That it was so used, is further shown by the testator's direction concerning his money in the next paragraph of the will, already quoted ; the executors are directed to collect his rents and place the same in bank, until such times that said rents, " together with any other moneys I may have remaining after paying my debts, funeral expenses, etc., as aforesaid, shall amount to the sum of five thousand dollars," when the money is to be expended in the erection of a family monument.    If by the use of the words " the balance of the personal effects " in the first paragraph he thought to dispose of his money, these directions are wholly inconsistent with such intent, while they are in harmony with the intention to restrict them to the balance of the household goods, books, clothing and furniture not desired by his brother.

The cases cited by appellants are, in their form of expression, all distinguishable from the one in hand.    In Campbell v. Prescott, 15 Ves. 507, it was held, these words passed the whole personalty:  " I give to my sons all my . . . . merchandise stock, with jewels, plate, household goods, furniture, and all effects whatsoever."    In Mitchell v. Mitchell, 5 Mad. 69, this was the language of the testator:  " All and singular my plate, linen, china, household goods and furniture, and effects that I shall die possessed of."    This was held to pass the personal estate.    In these and the other cases cited, the word " effects " is framed in paragraphs different from that in this will ; there was no indication from what the testator said to restrict the sweeping effect which the law otherwise gives to the word.    But here, as is said by the court in Ennis v. Smith, 14 How. 400, " Effects in French, or the word *effets* has the same meaning in common parlance and in law that it has in English.    Its meaning properly, in either, when used indefinitely in wills, but in connection with something particular and certain, is limited by its association to other things of a like kind."

But it is useless to go over the many cases cited on each side here, for as is said in Steele v. Thompson, 14 S. & R. 84: "Every case of this cast is individual ; there can be no adherence to precedents, for no two wills can be exactly alike."    And as is said in Hoge v. Hoge, 1 S. & R. 156 :  " Cases on wills have no great weight unless exactly similar in every respect. To render them authoritative, they should be in verbis ipsis-

simis, and made by the testator in the same situation and circumstances." The question is, not what might pass by the words "personal effects," but what did this testator intend, here, should pass.

The argument based on the context preceding the paragraph in dispute, in a doubtful case, would probably turn the scale in favor of appellant. In this introductory paragraph, the testator positively announced an intention to dispose of his whole estate, not to die intestate as to any part of it; and that this, being an intention which the law favors, the interpretation asked for, it is urged, should be put upon the first paragraph. My trouble is, that these are the only words in the will which indicate an intention to dispose of this large sum of money in the executor's hands. After directions as to payment of debts and funeral expenses, and before proceeding to dispose of his estate, he says : "I direct that the whole of my estate remaining shall be divided as follows." Giving to these words their literal meaning, they are a positive declaration of an intention to die testate as to the whole estate, real and personal. As to the weight to be given to such declarations in the introductory clauses of wills, the remarks of Chief Justice TILGHMAN in Steele v. Thompson, 14 S. & R. 84, are in point. He says : "In connection with other circumstances, such an introduction may be worthy of consideration, but the better opinion seems to be there is not much in it, because it is generally considered by the drawer as a matter of form, and put down of course before he begins to express the will of the testator; and because it cannot be doubted that most men when they make their wills do intend to dispose of their whole estate, whether they say so or not." And as is held in Rupp v. Eberly, 79 Pa. 141, while these introductory words are to be considered as illustrating the intention they will not of themselves pass property which is clearly omitted. Here, while the testator said he intended to dispose of his whole estate, he clearly did not do so. There is no ambiguity in the will; the first paragraph bequeaths to his brother so much of his household goods, books and furniture as he chooses to accept, and the balance of the personal effects is bequeathed to the children of his sister; he directed that his money should be applied to his debts, and $5,000 to the erection of a monument; he devised all of his real estate in sepa-

rate parcels to particular persons, but made no disposition of the large sum of money now for distribution. Therefore, there was nothing left for the court below to do but to distribute this fund under the intestate laws, and the judgment in my opinion ought to be affirmed.