## Luce *et al. versus* Harris.

1. A devise was "to my son Jacob and Eliza his wife, the tract of land * * * during their natural life * * * I order that my son Jacob and wife shall not sell or dispose of their life-interest in, &c., to any person, and further that the land given to Jacob and wife shall be equally divided among their children at their death. It is my wish the farm be owned by the boy, he paying to his sisters proper legacies when he and they shall become of age." At the date of the will and the testator's death Jacob was married to a second wife, named Eliza; he had two daughters of his first marriage who were of tender years at his second marriage; they were treated by him and his wife without any distinction from her own children, consisting of one son and four daughters. By subsequent clauses in his will the testator made provision for all his other children and grandchildren. *Held*, that the daughters of Jacob's first wife took under the devise to the children of Jacob and his wife.

2. Under the circumstances, the two daughters being of his own blood, were children of Jacob and Eliza, in the ordinary meaning of the term.

3. The direction that "the boy" was to pay "proper legacies" to his *sisters* included those of his half-blood.

November 18th 1875. Before Agnew, C. J., Sharswood, Williams, Mercur, Gordon, Paxson and Woodward, JJ.

Error to the Court of Common Pleas of *Fayette county :* Of October and November Term 1875, No. 292.

This was an action of ejectment, brought by Elizabeth Luce and the minor children of W. W. Luce, deceased, by their guardian, David Luce, against James F. Harris.

The writ was issued January 15th 1874, for two undivided seventh parts of two tracts of land in Perry township, containing together about 115 acres.

The question in this case arose under the will of Jacob Harris, deceased, who died December 25th 1852, seised of the real estate above mentioned.

The testator left eight children surviving him, one of whom was Jacob Harris, Jr. There also survived him the widows and children of two sons, Isaac and Benjamin, who had died in his lifetime; Jacob Harris, Jr., had been twice married; his first wife was dead at the date of the testator's will, leaving two daughters, one afterwards Elizabeth Luce, one of the plaintiffs, and the other afterwards Jemima Wilson ; after the death of Jacob Harris Jr.'s first wife, he married a second wife, Eliza; of this marriage he had one son and four daughters, James F. Harris, the defendant, being the son. Jacob Harris, Jr., died in July 1857, leaving his widow and these seven children to survive him ; his widow died in 1872.

At his second marriage the two daughters of his first marriage were of tender age; they continued to reside in their father's house and were treated by himself and his second wife, Eliza, without any distinction between them and her own children ; she died in July 1872. Elizabeth and Jemima, the daughters of the first marriage, were married after the date of the will.

[Luce v. Harris.]

The testator's will was dated November 15th 1852, and proved December 30th of the same year. He gave to his wife, for life, a tract of land which he designated; also, an annuity of $30, and some personal chattels.

The next clause, that under which the controversy in this case arises, was as follows:—

"Fifth. I give and bequeath unto my son Jacob Harris, and Eliza his wife, the tract of land on which they now reside, during their natural lifetime; it containing one hundred acres, more or less; and further, I give unto my son Jacob and wife one-third of the farm on which I now reside, which they shall come into possession of at my decease; and further, I order that my son Jacob and his wife shall not sell or dispose of their life-interest in the foregoing devises to any person or persons; and further, that the land given to Jacob and wife shall be equally divided among their children at their death. It is my wish that the farm be owned by the boy, he paying his sisters proper legacies when he and them shall become of age."

He then gave a tract of land to the widow of his son Benjamin for life; after her death the land to go to two sons of his son Benjamin, they paying to their sisters sums of money specified; he gave to these two grandsons also one-third of the "homestead farm," and to the testator's son James, the remaining third; the devisees of the homestead farm, including Jacob, to pay to testator's daughters $500 each; he gave to one of the daughters a note he held against her husband. He gave to the widow of his son Isaac $100, and $100 to each of her three sons; all his furniture at his wife's death to go to his heirs. He directed what he had given to one of his daughters to go to her children at her death.

By these bequests he made some provision for all his children and grandchildren, except Eliza and Jemima, unless they be included in devise to Jacob and his wife Eliza and their children. The question in the case is, whether they are intended to be included amongst the children of "Jacob and Eliza his wife."

On the 8th of April 1868, Jemima Wilson conveyed her interest in the land in dispute to W. W. Luce; he afterwards died, leaving his widow and children, the minor plaintiffs in this suit, to survive him.

At the March Term 1872 of the Orphans' Court, James F. Harris, the only son of Jacob Harris, Jr., petitioned the Orphans' Court, setting out the devise, &c., that Jacob and Eliza his wife accepted them; the death of the testator, "leaving to survive him Eliza his widow, 'and five children, to wit, your petitioner, who is the only son, Harriet Ann, Frances, Maggie and Ellen, they being children of the said Jacob and Eliza Harris;' that the widow died leaving the petitioner, 'her only son,' and the daughters, naming

29 P. F. SMITH—28

them.   The prayer was for an inquest to make partition of the land devised.

An inquest was awarded and partition had; and, under appropriate proceedings, the land was adjudged to James F. Harris, the petitioner.

The two daughters, Elizabeth and Jemima, are not mentioned nor referred to in the petition or in any of the proceedings in partition.

The case was tried September 25th 1875, before Stowe, J., of the Court of Common Pleas of the Fifth Judicial District.   The foregoing facts appeared on the trial.

The court charged: " We are of the opinion that, under the will, plaintiffs are not entitled to recover, and therefore your verdict will be for defendant."

The verdict was for the defendant.

The plaintiffs took a writ of error and assigned for error the charge of the court.

*W. H. Playford* (with whom was *J. Darby*), for plaintiffs in error.—The whole will and the circumstances of the testator's family are to be taken into consideration in construing it: Urie *v.* Irvine, 9 Harris 310.   An heir at law can be disinherited only by express devise or necessary implication: Bender *v.* Dietrick, 7 W. & S. 284.   Gifts to brothers and sisters include half-brothers and sisters : Hawkins on Wills 86.

*C. E. Boyle* (with whom was *G. W. K. Minor*), for defendant in error.—A gift to children does not extend to those by affinity : 2 Jarman on Wills 73 ; Co. Litt. 284, *a ;* Hawkins on Wills 112. " Children," does not, unless the intention be clear, include grandchildren : Dickinson *v.* Lee, 4 Watts 82 ; Hallowell *v.* Phipps, 2 Whart. 376 ; Gross's Estate, 10 Barr 360 ; Barbara Herr's Estate, 4 Casey 467 ; Horwitz *v.* Norris, 13 Wright 213.

Mr. Justice PAXSON delivered the opinion of the court, January 6th 1876.

That portion of the will of Jacob Harris under which the contention in this case arises, is in the following words : " I give and bequeath unto my son, Jacob Harris, and Eliza, his wife, the tract of land on which they now reside, during their natural lifetime, it containing one hundred acres, more or less ; and further, I give unto my son Jacob and wife, one-third of the farm on which I now reside, which they shall come into possession of at my death ; and further, I order that my son Jacob and his wife shall not sell or dispose of their life-interest in the foregoing devises to any person or persons ; and further, that the land given to Jacob and wife shall be equally divided among their children at their death.   It

[Luce v. Harris.]

is my wish the farm be owned by the boy, he paying his sisters proper legacies when he and they shall become of age." Jacob Harris, Jr., the devisee above named, died in July 1857, leaving surviving him a widow and seven children, two girls by a former marriage, and four girls and one son by his second wife, Eliza. The single question raised by the record is, whether the children of Jacob Harris, the devisee, by his first wife, are entitled to take under the said devise. If not, then they are disinherited, for there is no other provision for them under the will. It is a maxim, which applies here as well as in England, that an heir at law can only be disinherited by express devise or necessary implication, and that implication has been defined to be such a strong probability, that an intention to the contrary cannot be supposed: Bender v. Dietrick, 7 W. & S. 284. There is nothing on the face of this will to indicate any intention on the part of the testator to disinherit the children of his son Jacob by his first wife; nor is there anything to show that said children were not proper objects of the testator's bounty. He appears to have made provision for all of his other children and grandchildren as well as for his wife. Sixteen years before the testator made his will, his son Jacob's first wife died, leaving two daughters, then young children. Shortly after his son married a second wife, and had by her four daughters and one son. The second wife took the children of her husband by his first wife and brought them up as her own. It is probable the testator, when he executed his will, had lost sight of the fact that the two children by the first marriage were not children of the body of Eliza. They were nevertheless of his own blood and of the blood of his son. They were children of Jacob and Eliza in the ordinary meaning of the term. They were known and reputed as such.

It has been held in England, that natural children, having acquired the reputation of being the children of a particular person prior to the date of the will, are capable of taking under the description of "children:" Wilkinson v. Adams, 1 Ves. & B. 422. When the testator provides that "the land given to Jacob and wife shall be equally divided among their children at their death," he evidently intended to include the children of Jacob by his first wife, who were also the step-children of his second wife. In order to confine the generality of the words "their children," to those born of the second marriage and thus disinherit those born of the first marriage, such intention must clearly appear from the face of the will. It must be manifest by its express terms, or by necessary implication. Neither exists in this case. That he intended to provide for the children of the first marriage further appears from the provision in the will, that "it is my wish that the farm be owned by the boy, he paying his sisters proper legacies when he and them shall become of age." The settled rule is, that a gift to

[Luce *v.* Harris.]

brothers or sisters includes the brothers or sisters of half-blood; Hawkins on Wills 86. There is nothing in the language of this · clause to exclude the half-sisters, who were the children of the first marriage.

In the absence of the contrary intention appearing upon the face of the will, we think the devise to Jacob and wife and " their children," includes children who were of the blood of Jacob, and who were step-children of his wife.

Judgment reversed, and a *venire facias de novo* awarded.