## Hogg's Estate

Before Van Dusen, Sinkler, Klein, and Bok, JJ.

*Rodney T. Bonsall,* for exceptants.
*David Friedman* and *Alex. M. DeHaven,* contra.

BOK, J., December 4, 1936.—We find little to add to the auditing judge's succinct and correct conclusion.

The exceptants' argument is that only those grandchildren whose parents were named in the will should inherit, and that the intervening intestacy was not anticipated by testator.

Both rules of construction and arguments on probabilities must give way before positive language, and we are in accord with the auditing judge when he holds that the word "grandchildren" obviously means all grandchildren. There is no ambiguity in it, and it is quite clear that if there were no living children of testator's four children named in his will the two children of testator's afterborn children would fit the description.

An heir cannot be disinherited except by express words or by necessary implication. In Robison's Estate, 266 Pa. 251, 254, there was a gift to "children", and it was attempted to exclude testator's son by a former wife from whom he had been divorced. Testator and this son had been estranged for 22 years. The court said:

"We find no express words of disinheritance in the will, but, on the contrary, it appears petitioner is clearly within the class created by the residuary gifts to testa-

tor's children. Nor do we find in the will, or circumstances under which it was made, anything indicating, or that can be construed as, an exclusion of petitioner by necessary implication. The use of the word 'children' necessarily implies all children and an intention to treat all alike: Hoch's Est., 154 Pa. 417."

In Luce et al. v. Harris, 79 Pa. 432, testator devised land to his son and daughter-in-law, Jacob and Eliza, for life, and to "their children at their death." Eliza was Jacob's second wife, and he had two daughters by his first wife. The court said at page 435:

"In order to confine the generality of the words 'their children', to those born of the second marriage and thus disinherit those born of the first marriage, such intention must clearly appear from the face of the will. It must be manifest by its express terms, or by necessary implication. Neither exists in this case."

This testator saw fit to make his will in 1855, "being about to travel abroad". Having survived the trip and added three more children to his family, he failed to change his will, as he could easily have done. We know of no case which holds that the law which lets in afterborn children exhausts the share which their line of descent may take under a provision in the will whose description fits their issue. We are primarily concerned with what testator said, since it is in clear language.

In Ludwick's Estate, 269 Pa. 365, 371, the court said:

"We might guess as to his intent, but, no matter which way we conclude, we would do violence to the language actually used, and this we are not permitted to do, since the 'question in expounding a will is not what the testator meant but what is the meaning of his words' ".

The words "per stirpes" in the gift to the grandchildren, which is a gift to a class, determine the shares the grandchildren were to inherit and do not indicate a discrimination between the ancestors from whom they were to inherit.

We do not feel that Miller's Estate, 323 Pa. 9, alters the situation. It is quite as consistent for us to believe that when he wrote his will and used the word "grandchildren" testator contemplated the possibility of having more children as it is for us to believe that when he wrote his will and used that word he contemplated having none, or that he meant to discriminate against unborn children merely by naming living ones.

If it were not for the statute which let in afterborn children and so operated against the will, no one would doubt that the natural meaning of the disputed word when he used it was intended to include all grandchildren. In that event, the hard case which appeals to our sympathies would influence us to read the word in its natural sense. It cannot change that natural meaning merely because the hard case now works the other way.

The exceptions are dismissed and the account is confirmed absolutely.

STEARNE, J., dissenting—I am unable to concur in the conclusion reached by the majority of the court. To my mind, in construing a will, the court's function is to seek out the intent of testator, and to give effect thereto, unless such intent is prohibited or made ineffectual by law.

It is apparent under this will that (after provision for the widow) the sole objects of testator's bounty were his four named children and their issue. To these named children he gave life estates, and until the death of the survivor of them. He contemplated the possibility of these children dying with and without issue. In that event he provided that such income should go per stirpes to the deceased child's children, if any, and, if not, then to testator's surviving children and to issue, per stirpes, of deceased children.

Up to this point certainly the only grandchildren within testator's contemplation were the children of his four named children. Upon the decease of all his children he gave the principal of his estate unto his "grandchildren"

per stirpes. But there was one thing testator apparently overlooked, viz., the effect of the birth of children after the date of the execution of his will. This event occurred. Three children were so born to him. By operation of law, the will was revoked pro tanto as to such afterborn children.

The prior record of this court discloses that upon the death of testator the three afterborn children were awarded, and received, their full distributive shares, as though testator had died intestate. The balance of the estate was awarded in trust, for the benefit of testator's named children and "grandchildren" under the provisions of his will. The last named surviving child having died, the principal of the trust is presently distributable.

Three of the four named children died without issue. A fourth child died leaving three surviving children. Of the three afterborn children one survives (without present issue), one died without issue, and the third died leaving two surviving children.

The two grandchildren of testator, being the issue of a deceased afterborn child, have been awarded an equal one-half share of this trust (despite the fact that the parent of these grandchildren received her full share of decedent's estate in fee, not under the will, but by operation of law). The balance, or the other half, is awarded in thirds to the three grandchildren who were the only issue of the four named children in the will. This I deem error.

The ruling of the auditing judge and the majority of the court is predicated upon testator's unqualified use of the word "grandchildren". It is decided that every person who qualifies as a grandchild is entitled to participate. Hence, irrespective of the other provisions of the will, and the extrinsic circumstances connected with testator and the execution of his will, grandchildren being children of a deceased afterborn child (who received her full share in fee) qualify as distributees.

But mere words, irrespective of their etymological or technical meaning, are never permitted to thwart a testator's obvious intent. Thus "children" may include grandchildren: Campbell's Estate, 202 Pa. 459; "grandchildren" may include "great-grandchildren" in one feature of a will, and not as to another: Rogers' Estate, 17 D. & C. 55, 313 Pa. 531; "available stocks" may include "cash, notes and bonds": Sweitzer's Estate, 142 Pa. 541; "other investments" may include "cash": Pearson's Estate, 10 Dist. R. 189; "money" is not limited to "specie": Williamson's Estate, 302 Pa. 462; Ingham's Estate, 315 Pa. 293. Furthermore, in aid of effecting an intention, the courts have construed "or" to mean "and": Edwards' Estate, 227 Pa. 299; Simpson's Estate, 304 Pa. 396. Words have been transposed, supplied, or rejected: Biles et al. v. Biles, 281 Pa. 565; McConnell's Estate, 266 Pa. 294. In construing a most difficult and obscure will, Mr. Justice Maxey wrote in Williamson's Estate, supra, at page 466: "Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another."

I fully concede that a court is not permitted to redraft a will, and that in expounding a testamentary document we are limited, not to what the court considers testator meant, but to the meaning of his words. I am in complete agreement with such cases as Robison's Estate, supra, Luce et al. v. Harris, supra, and Ludwick's Estate, supra, cited by the majority, but do not think that they apply to, and rule, the facts of this case.

I do not suggest that the revocation pro tanto of testator's will (which let in the parents of the claimants) necessarily "exhausts the share which their line of descent may take under the provisions in the will". Of course, testator, despite the revocation pro tanto of his will by extrinsic circumstances, could provide for children of afterborn children, if the language of the will is capable of such a remarkable situation. And I concede the well-settled principle of law (the reverse of the present situa-

tion) that even where an individual is expressly excluded by the terms of a will, nevertheless, he may still take where an intestacy results, either because of the operation of the intestate law, or by testator's employment of the provisions thereof: See Potter's Estate, 257 Pa. 468; Simpson's Estate, 245 Pa. 244.

In my opinion the crux of this case is the correct determination of whom testator intended to include, when, in the language of this entire will and the surrounding circumstances, he employed the term "grandchildren".

At the outset it is to be remembered that the Supreme Court in Fleck v. Harmstad et al., 304 Pa. 302, has definitely ruled: "A testator cannot have any intention toward a thing of whose existence he is unaware"; furthermore, that the actual intention of the testator is paramount, and in ascertaining the intention of testator his will is to be construed as of the date of its execution, not as of the date of his death: Miller's Estate, supra.

Coming now to the construction of the will itself: There never has been the slightest suspicion or doubt that when testator was disposing of the income upon the death of each child the only grandchildren he considered were those who took as the issue of his four named children. This was stirpital distribution. In disposing of the principal, after the death of the last surviving named child, reading the will from its four corners, I can draw no other conclusion but that when he gave it "unto my grandchildren . . . per stirpes and not per capita" he was still referring to these same grandchildren whom he had already provided for, concerning their deceased parents' shares of income.

The whole testamentary scheme appears plain and unambiguous. It was the usual plan of a father who was giving his named children life estates, until the death of the survivor, and then passing the principal to their children. The subsequent birth of children, and the operation of law, revoked his will pro tanto. But, except as modified,

the will stands as originally written. It appears to me untenable to say that the law provided for afterborn children because testator had not contemplated them at the execution of his will, but at the same time rule that testator himself intended, by the use of the unqualified word "grandchildren", to include the children of uncontemplated afterborn children.

The auditing judge, in support of such a theory, notes that the adverb "said" appearing before "children" is significantly absent before the word "grandchildren", from which we are asked to deduce that the income was to go to his named children, but the principal pass to grandchildren generally. I cannot attribute any such intention to testator, from a reading of the whole will.

If the letter of dispository disposition be required, in addition to the obvious intent disclosed by the will, I would not hesitate, in the facts of this case, and under the authorities above quoted, to read into the will the word "said" or "hereinbefore mentioned" before "grandchildren". Certainly the grandchildren to whom testator was referring were only those whom he knew or contemplated, viz., the issue of his four named children.

In conclusion I suggest that the result reached by the majority will work a most unjust distribution of this estate. The issue of afterborn children may have taken by will or descent the share of their deceased parent, and now take a share of the trust set up for the four named children and their issue. The effect will be to give to these grandchildren claimants one half of one half or one fourth, whereas the issue of the deceased children only receive one third of one half or one sixth each. This, to my mind, violates the plain intent of testator.

I would sustain the exceptions.

SINKLER, J., joins in this dissent.