## Hogg's Estate.

Argued April 22, 1937; reargued January 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Benjamin O. Frick,* with him *Rodney T. Bonsall,* for appellants.

*David Friedman,* with him *Alexander M. DeHaven,* for appellees.

OPINION BY MR. JUSTICE STERN, January 24, 1938:

We are called upon in this case to construe a will written more than eighty years ago. It was executed in 1855 by Alexander Hogg. At that time he had a wife and four children, and he bequeathed the net income from his residuary estate to his wife for life or during widowhood, and, after her remarriage or death, one-fourth of the net income to his daughter Martha, one-fourth to his daughter Eliza, one-fourth to his son George, and the remaining one-fourth to his daughter Margaret, each for life. If any of these children died leaving issue surviving, the income previously paid to such child was to be paid to his or her children, but if any died without issue surviving, his or her share of the income was to be paid to the surviving children and the issue of then deceased children, the issue taking the share of their parent. The will then proceeded: "And from and immediately after the decease of all my said children, then I give bequeath and devise all my estate . . . unto my grand children their heirs and assigns forever per stirpes and not per capita. . . ."

Testator died in 1865, predeceased by his son George, and leaving, in addition to his widow and the three other children already mentioned, three children born after the execution of the will, namely, Mary, Ernestine and John. The last survivor of the children named in the will, Eliza, died in 1935, this being the event upon the happening of which the principal of the residuary estate was to be divided. By that time all of the after-born children of testator also had died except Mary, who, however, has no issue and is not concerned in the present proceedings. Only two of testator's children left issue surviving—Martha, whose married name was McCollum, and who left three children, Hugh, William and Andrew McCollum, all living and of age; and John, one of the after-born children, who left two children, Irving and Alexander Hogg, both living and of age.

The account of the executors was filed and audited in 1867, and at that time the three after-born children claimed and received the shares to which they would have been respectively entitled had their father died intestate. As the widow was living, these shares each amounted to one-sixth of two-thirds, or one-ninth, of the principal of the residuary estate; the remaining two-thirds of the estate was awarded to the executors in trust for the purposes set forth in the will. In the present adjudication the court below awarded one-half of the estate now for distribution to Irving and Alexander Hogg and one-half to Hugh, William and Andrew Mc-Collum. The McCollums appeal on the ground that they should receive the entire award, and John Hogg's children, appellees, should be excluded. The controversy hinges solely upon the construction to be given to the term "grand children" as used by the testator. Appellants assert it should be restricted to children of the children specifically named in the will, whereas appellees contend they come within its precise meaning and it would be arbitrary to eliminate them because of any conjectured intention of testator.

It is urged by appellants that to give appellees one-half of the distributable estate would be inequitable because the father of appellees has already received a one-ninth share of the principal. On the other hand, appellees call attention to the fact that, if appellants' position were sustained, the latter would be receiving two-thirds of the original estate, whereas appellees, who stand in the same relationship to testator, would get nothing, except, possibly, from their father, the one-ninth of the estate which he received as an after-born child.

These contentions as to the relative merits, from a standpoint of abstract justice, of the alternative methods of distribution are not a proper subject of consideration by the court, since the judicial function is limited to the enforcement of testator's directions. If his language is clear it constitutes its own decree of distribution. The court may not speculate upon the question as to what testator might have provided in this case had he been endowed with prescience; the only inquiry is in regard to the actual provisions of his will, and the criterion of their construction is the meaning of his words. It is true that if a testator indicates he is using language in a special sense it will be interpreted accordingly, because the test is what his words meant *to him* and the thought which *he* intended to convey by them; language being but a medium of expression, the object of interpretation is to ascertain its import as used by the one who employs it. But the presumption is that expressions are used in their ordinary and normal signification unless there be some clear indication to the contrary, and in the present case we search in vain for such indication. There is nothing to show that testator intended by "grand children" to mean anything other than children of *all* his children, without discrimination of any kind.

Appellants contend that testator did not have his after-born children in contemplation and a fortiori

could not have had *their* children in contemplation. The rule is well established, however, that where there is a bequest to a class its members are determined as of the time appointed for distribution, and it is of no consequence that the testator, at the time of the execution of his will, may not have had in mind the individuals who might eventually come to compose such class. Had testator made a bequest to his "children" (without specifying them by name), this term would have been held to include his after-born children, even though he might not have had them in actual contemplation: *Newlin's Estate*, 209 Pa. 456; *Schaper v. Pittsburgh Coal Co.*, 266 Pa. 154. Why, then, should not the term "grand children," similarly designative of a class, include the children of after-born children, irrespective of whether or not they were actually in the contemplation of testator?

Appellants attach significance to the provision of the will that the grandchildren, their heirs and assigns, are to take per stirpes and not per capita. This fact has no bearing upon the determination of the present question. The grandchildren are given bequests of the residuary estate directly and in their own capacity, not in lieu of parents who were to take if living. The phrase "per stirpes" is not used, therefore, in the sense of taking by right of representation of a parent, but to indicate that the taking is to be collectively by families and not equally as individuals. An after-born child who exercised his statutory right to take irrespective of the will could not thereby affect the legacy to his children which was wholly independent of any bequest or share to the parent.

In *Stickle's Appeal*, 29 Pa. 234, the testator provided that a remainder after a life estate should be equally divided among his nearest heirs. Among the latter was one to whom was expressly bequeathed in the will "one dollar in addition to what I have already given him." The court said: "He is one of the 'nearest heirs' of the

testator, and by that description he must come in equally with the other residuary legatees." In *Luce v. Harris,* 79 Pa. 432, there was a devise to testator's son Jacob and Eliza his wife for their lives, and at their death to "their children." Jacob had two daughters by a previous marriage. It was contended that these should not be included in "their children," but the court said (p. 435) : "In order to confine the generality of the words 'their children,' to those born of the second marriage and thus disinherit those born of the first marriage, such intention must clearly appear from the face of the will. It must be manifest by its express terms, or by necessary implication. Neither exists in this case." In *Simpson's Estate,* 245 Pa. 244, the testator made a bequest to children of two deceased children by his first wife, stating that he made "no other gift or bequest to them." It was held, nevertheless, that these grandchildren were entitled to share in the remainder of the estate, which, by the will, was to be divided among such persons as were entitled under the intestate laws if the life tenants died intestate, since they came within the class of those so entitled. This case distinguishes *Herr's Estate,* 28 Pa. 467, where a testator's grandsons, because they had been given specific bequests in the will "to be their . . . shares *in full,*" were held not to be entitled to share as members of a class to which they belonged. In *Robison's Estate,* 266 Pa. 251, the testator gave his estate to his "children." It was held that a son by a previous marriage was entitled to participate, although testator, having been divorced from his first wife, was not, for a period of twenty-two years prior to his death, on terms of family intimacy with this son. The court said (p. 254) : "We find no express words of disinheritance in the will, but, on the contrary, it appears petitioner is clearly within the class created by the residuary gifts to testator's children. . . . The mere failure of decedent to have communication with petitioner is not, under this situation,

sufficient to raise a presumption that testator in making his will in which he referred to his 'children,' without further designation or limitation, intended to exclude one of them."

These cases are typical decisional applications of the rule that a court must interpret testamentary expressions according to their plain language, and not seek to make them reflect its own view as to what might be more just in the light of circumstances unknown to the testator and therefore not considered by him. Even if close adherence to the letter of wills may bring about apparently undesirable results in some cases, the safe course, in the long run, is to assume that testators mean what they say when they express themselves in definite and unambiguous terms.

Decree affirmed; costs to be paid out of the estate.