## Hessenbruch Estate

*Roland Fleer, Waters, Fleer, Cooper & Gallagher, Frederick E. S. Morrison* and *Drinker, Biddle & Reath,* for accountants.

TAXIS, P. J., December 19, 1961. — The reason or purpose of the filing of the account now before the court is the death of Hermann M. Hessenbruch, the primary life beneficiary. He died on December 26, 1960, leaving a last will and testament on which letters testamentary have been granted to Girard Trust Corn Exchange Bank, Florence M. D. Hessenbruch and Edward Starr, Jr., executors in said will named. . . .

Two questions have been submitted for adjudication.

Does article Second of the will of Ida M. Hessenbruch provide a legacy of $25,000 for each grandchild whether born before or after her death?

Article Second provides as follows:

"Second: I give and bequeath to each of my grandchildren the sum of Twenty-five thousand Dollars ($25,000). I direct that the bequests to my grandchildren, Anna W. Hessenbruch and Ida M. Hessenbruch shall be paid to the Trustee under a certain Deed dated July 13, 1918, between Hermann Markle Hessenbruch and Florence M. D. Hessenbruch to be held upon the same terms, conditions and trusts as in said Indenture set forth, and the amount payable to Hermann Markle Hessenbruch, Jr., shall be paid to the Trustee under a certain Deed dated November 16, 1923, between Hermann Markle Hessenbruch and Florence M. D. Hessenbruch."

Ida M. Hessenbruch, decedent, died on November 27, 1925, and was survived by her son, Hermann, and that son's three children: Anna, Ida and Hermann, Jr. Upon the adjudication of the executors' account on October 26, 1926, three sums of $25,000 each were paid over to decedent's grandchildren's several trusts as provided in article Second and the residuary estate

distributed to her son as trustee in trust, with the income payable to him for life and, upon his death on December 26, 1960, the residuary trust became distributable outright to his descendants per stirpes.

In February 1933, a fourth child, Florence Mary Hessenbruch (now Florence M. H. Ill) was born to the son. In April 1933, since decedent's will did not limit the bequests of $25,000 to each grandchild living at decedent's death, the son-trustee set aside in a separate trust for the after-born grandchild assets of this residuary trust having a then value of $25,063.50, for which credit is now claimed in the present account.

In Earle Estate, 369 Pa. 52, the Supreme Court held, under the language of a will very similar to the provisions of Article Second of the present will, that after-born grandchildren were included in the class of grandchildren for each of whom a specific legacy was provided. In Earle Estate, decedent's will provided as follows:

"In the event that my estate, after the payment of taxes, shall at least amount to the net sum of Five Million ($5,000,000) Dollars or over, I give and bequeath to my Trustees in Trust for the benefit of each and every male child of my sons who shall by birth inherit and bear the name of Earle, the sum of One Hundred Thousand ($100,000) Dollars for each one of such male children. Said sum shall be held in Trust upon the same terms, conditions and uses as provided in ITEM THIRD in the trust for the benefit of my granddaughter LOUISE DILWORTH BEGGS, and in ITEM FOURTH in trust for the benefit of my granddaughter EDITH EARLE LEE."

The residuary estate in Earle Estate, supra, was devised in trust and distribution postponed until 21 years after the death of decedent's last surviving grandchild or great-grandchild living at the time of

his death. The Supreme Court held that the class of grandchildren to take under this provision included grandchildren born after the death of the testator.

It is interesting to observe that the Orphans' Court of Philadelphia applied the general rule of construction known as "the rule of convenience," namely, that in the case of an immediate gift to a class, the class closes as of the death of the testator. The Philadelphia Orphans' Court held that an after-born male child was not included in the class.

The Supreme Court, in reversing, held that the basic reason for the rule of convenience, namely, that the distribution of an estate would not be postponed indefinitely, did not apply. The Supreme Court said, in part, (Earle Estate, supra, p. 61):

" '. . . The residuary trust will remain intact until "the expiration of twenty-one (21) years after the death of my [the testator's] last surviving grandchild or great-grandchild living at the time of my decease." Distribution at the termination of the residuary trust will not be delayed, because it does not seem possible that the trust can terminate before the death of testator's two sons, when the class of grandsons will be complete.' It therefore serves no purpose to restrict words of futurity of the gifts here made to the period between the date of the will and testator's death because when such restriction serves no purpose, words of futurity are not to be restricted to date of testator's *death* but are projected at least to the *date of distribution* and it was expressly so held in Heisse v. Markland, 2 Rawle 274, (1830), and Austin's Estate, 315 Pa. 449, 173A. 278 (1934)."

In the present case, as in Earle Estate, the basic reason which gives rise to the rule of convenience is not present. Under the will of Ida M. Hessenbruch, her residuary estate is devised in trust for the life of her

only child, Hermann M. Hessenbruch, and on his death the entire trust becomes distributable. Since the class of grandchildren will be complete during the life of the son, therefore, keeping open the class of grandchildren so that an after-born grandchild will be included, would not postpone indefinitely the distribution of her estate, which, for the purpose of the application of the rule, is distributable upon the death of her son. The provisions of Article Second of decedent's will clearly show that she intended to benefit all of her grandchildren and not merely those who happen to have been born before her death, just as Earle Estate clearly intended, and as the Supreme Court so found, to benefit all of his grandsons bearing the name Earle, whether born before or after his death.

In Witman v. Webner, 351 Pa. 503 (1945), the Supreme Court said (p. 507) :

"It is well settled that if a person qualifies within the exact meaning of language describing a class he will be held to be a member of that class unless other language in the instrument expressly or by clear implication indicates a contrary intent: Robison's Estate, 266 Pa. 251, 109 A. 924, Hogg's Estate, 329 Pa. 163, 196 A. 503; Rosengarten Estate, 349 Pa. 32, 39, 36 A. 2d 310, 313, 314."

There is no other language in the will of Ida M. Hessenbruch expressly, or by clear implication, indicating that she intended to exclude from the class of grandchildren under Article Second, grandchildren born after her death; therefore, the grandchild, Florence M. Hessenbruch, who was born after decedent's death, was entitled to receive the $25,000 legacy.

The second question presented for adjudication relates to apportionments and the rule in Catherwood Trust, 405 Pa. 61.

From the inception of the testamentary residuary trust on February 4, 1927, to the death of Hermann

M. Hessenbruch on December 26, 1960, the sole income beneficiary, the trust received various stock dividends and realized gains on the sales of trust assets, all of which are reflected in the principal of the trust in the present accounting.

Under the ruling in Catherwood Trust, supra, capital gains and stock dividends received prior to the enactment of the 1945 Principal and Income Act of May 3, 1945, P. L. 416, are properly apportionable to income and now are distributable to the executors of the estate of Hermann M. Hessenbruch. Capital gains more specifically set forth in the petition for adjudication in the net amount of $16,296.60, after deduction of capital gains tax paid thereon, and stock dividends in the following amounts: 144.92 shares of Gulf Oil Company, 43.38 shares Standard Oil Company of New Jersey, are herewith awarded to the executor of the estate of Hermann M. Hessenbruch, deceased.

As to capital gains and stock dividends received since May 3, 1945, Catherwood Trust now requires that they remain in principal, and the same is herewith approved. . . .

And now, December 19, 1961, this adjudication is confirmed nisi.