## McEwan Trust

*Harry W. Fulton, Jr.,* for accountant.

*Philip R. McLaughlin* and *William M. Hoffman,* for claimant.

*Richard D. Gilardi, Robert B. Shust, James G. Dunn* and *Joseph R. Royston, Jr.,* for beneficiaries.

BOYLE, P. J., August 25, 1969.—The audit of the first and final account of Union National Bank of Pittsburgh, successor trustee, presents the following question: Where a deed of the trustees of a church creates a trust and provides a life income for their minister and his wife, and further provides that on the death of the survivor of the life beneficiaries the corpus of the trust shall be divided equally among "the children of both said William L. and Eleanor McEwan," is the child of the wife by a prior marriage entitled to share, with the children born of the marriage of the minister and his wife, in the distribution of the corpus?

The "William L. McEwan Fund" is before the court for confirmation of the first and final account of the Union National Bank of Pittsburgh, successor trustee, under a deed of trust from the Board of Trustees of the Third Presbyterian Church of the City of Pittsburgh, and for distribution of the principal thereof, said trust having terminated in accordance with its terms upon the death of Eleanor McEwan, the surviving life tenant, on July 3, 1968.

Martha M. Ulmer and Robert C. McEwan, Jr., children of Robert C. McEwan, a deceased son of William L. McEwan, oppose the inclusion of George F. Colvin as one of the persons entitled, as remaindermen beneficiaries, to participate in the distribution of the principal of said trust.

George F. Colvin, claimant (herein referred to as George) is 71 years of age and is the son of George Sloan Colvin and Eleanor Fulton Colvin, his wife. George's father died in 1900 and in 1905 his mother married Rev. Dr. William L. McEwan, a Presbyterian minister who was, himself, a widower. At the time of such marriage, Rev. Dr. McEwan had two children, born of his prior marriage, both of whom died, unmarried and without issue, prior to the creation of

the trust which is presently before the court for distribution.

At the date of the marriage of Rev. Dr. McEwan and George's mother, Rev. Dr. McEwan was pastor of the Third Presbyterian Church of Pittsburgh. He continued in this pastorate until his retirement in 1932.

Six children were born of the marriage of George's mother and Rev. Dr. McEwan; namely, Alexander McEwan, James McEwan, Robert McEwan, Thomas C. McEwan, Eleanor McEwan Hotchkian and Calvin W. McEwan, and all of said children were living on December 19, 1919, when the trust was created.

Following the marriage of his mother to Rev. Dr. McEwan, at which time George was eight years of age, and until he attained his majority, George resided continuously in the McEwan household except during the period of his attendance at Blair Academy, a preparatory school at Blairstown, N. J., and during the period of his military service in World War I. George had no inheritance from his natural father nor any independent income of any kind until he attained his majority and became self-supporting. Until he was 21 he was not a mere resident in the McEwan home but was an integral member of the McEwan family. The Rev. Dr. McEwan provided fully for George's maintenance and care and the complete cost of his education, including his tuition at Shadyside Academy in Pittsburgh, and, later, his tuition, room, board and other expenses incurred as a student at Blair Academy. It was only upon the attainment of his majority that George, in 1918, left the McEwan household to take employment in Philadelphia. In all the intervening years from the time of his mother's second marriage, and save only for the absence of a formal adoption by Rev. Dr. McEwan, George had been treated by both Rev. Dr. and Mrs. McEwan in ex-

actly the same manner and with the same parental love and devotion as the children born of their marriage. George returned to each of them the same full measure of filial love which they received from the children born of their marriage. The record portrays that the family relationship in the McEwan household was an ideal one. This close family relationship did not end when George left the shelter of the McEwan home to take his place in the world. During Rev. Dr. McEwan's remaining years, George, his wife and children continued to be frequent guests and visitors in the McEwan home.

All of these circumstances were widely known to the members of the congregation and Board of Trustees of the Third Presbyterian Church whose generosity created the fund now before the court.

Because of the nature of the provisions of the deed of trust, it is necessary to consider the status of Mrs. William McEwan in the community of members who comprised the congregation of the Third Presbyterian Church during the years of Rev. Dr. McEwan's pastorate and, especially, prior to and at the date of creation of the trust. In addition to meeting the needs of a large and growing family, she found time to assist and work with her husband in the discharge of his pastoral duties and to give unsparingly of her time and talents to the many activities, both spiritual and social, which make up the life of a large urban church congregation. In so doing, she earned the affection and gratitude of the members of the congregation and their board of trustees which prompted them to include her as a direct object of their bounty in the trust which they created for the benefit of her husband and herself.

The provisions of the deed of trust which are applicable to the question here presented are contained in paragraph "Second" which is as follows:

"Second. The trust fund shall be invested and the income thereof collected by the Trustee, and the net income shall be paid in quarterly installments, which shall be as nearly equal in amount as practicable, to William L. McEwan, pastor of aforesaid Third Presbyterian Church of Pittsburgh, during his natural life, and thereafter to Eleanor McEwan, his wife, if then living, during her natural life, and at the death of the survivor then to the children of both said William L. and Eleanor McEwan and the issue of any deceased children, taking by representation until the youngest of said children attains majority, when the corpus of the trust fund is to be divided equally among those of said children then surviving and the issue of any deceased children, taking by representation as aforesaid; but if not (sic) of said children, or issue of deceased children, survive the said William L. and Eleanor McEwan, or if all of said children and issue of deceased children have died before the youngest child attains majority then the corpus of the trust fund shall go to the Third Presbyterian Church of Pittsburgh."

The testimony in this case establishes clearly that George Colvin, the claimant, was considered, treated and loved as a child, not only of his mother, Eleanor McEwan, but also as a child of the McEwan family, composed of the Rev. Dr. McEwan, his wife, Eleanor, and their children. George became a member of the McEwan household in 1905 when he was a boy of eight years. Except for absences at boarding school and the time of his service in the First World War he resided in the home of his mother and her husband, the Rev. Dr. McEwan. He was treated with paternal affection by his stepfather who supported him and treated him as a son.

There is in evidence a beautiful paternal letter written on June 21, 1910, when George was 13 years old,

by Rev. Dr. McEwan in his own handwriting to George. In this letter George is addressed as "Dear George" and at the end appear the words "With true love for you. Father." There is also a postscript saying "I want you to give 'Mommy Dear' a good squeeze for me. Your Daddy."

During his minority at home in the McEwan household George was well known to the members of the congregation of the Third Presbyterian Church and to the trustees. He was present at the table when the trustees of the church would come to the Rev. Dr. McEwan's home for dinner. The testimony of George at page 41 shows the following:

"Q. At those dinners when church officers and board members would be present, where did you sit?

"A. If the table was crowded, I sat beside mother, at the end of the table."

George's mother, Mrs. Eleanor McEwan, was a primary beneficiary of the bounty of the members and trustees of the Third Presbyterian Church. The provision for her equalled the provision for her husband. She, too, was given the total net income from the trust "during her natural life" should she survive her husband. The Rev. Dr. McEwan died on November 4, 1937. Eleanor McEwan survived him and died on July 3, 1968. It is her death which occasioned the filing of the account which is presently before the court and in the audit of which the question of the right of her son, George Colvin, to share in the distribution of the principal is raised. Neither of the two living children of the marriage of Rev. Dr. McEwan and his wife, Eleanor, objects to the proposed distribution of a one-seventh share to George. Four children are deceased leaving issue to represent them. The only objection is filed by two grandchildren who will take by representation the share of their deceased father.

In every deed of trust and in every will, the pole-star which must guide the court in making distribution of the estate is the intent of the settlor or testator, and that intent, once ascertained, must prevail: Pew Trust, 411 Pa. 96, 106. The court must also consider not only the language and the scheme of the instrument but also the facts and circumstances surrounding the settlor, including the condition of the settlor's family, the natural objects of settlor's bounty, and the amount and character of the property involved: Pew Trust, supra, page 107.

Section "Second" of the deed of trust after fixing the time when the trust shall terminate, directs that then "the corpus of the trust fund is to be divided equally among those of said children then surviving and the issue of any deceased children, taking by representation . . ." The reference to "said children," is to the prior provision in the same section, directing the payment of income from the trust and which reads as follows: ". . . and the net income shall be paid . . . to William L. McEwan, . . . during his natural life, and thereafter to Eleanor McEwan, his wife, if then living, during her natural life, and *at the death of the survivor then to the children of both said William L. and Eleanor McEwan* and the issue of any deceased children, taking by representation, until the youngest of said children attains majority . . ." (Italics supplied.)

Research has not disclosed a case involving an inter vivos trust instrument in which the circumstances and language are nearly similar to the case at bar. Most of the cases involving wills and testamentary trusts containing similar references to "children" are governed by the well-established principle that the testator did not intend to disinherit his own children or those of his own blood, that is, to cut them off from participation in *his* bounty: Witman v. Webner, 351

Pa. 503 (a deed of trust); Luce v. Harris, 79 Pa. 432 (a will); Brown Estate, 13 Westmoreland 181 (a will); Ritz Estate, 15 Lanc. 21; Estate of Mellinger, 43 Lanc. 513 (a will).

A salient and controlling fact in the case at bar is that George's mother, Eleanor McEwan, was a primary beneficiary of the bounty of the congregation and trustees of the Third Presbyterian Church who are the settlors of this trust. Her status was that of a named life beneficiary of the trust. Eleanor McEwan survived her husband. She died in 1968. The youngest of the children has long since attained "majority" and the trust fund is ripe for distribution ". . . to the children of both said William L. and Eleanor McEwan and the issue of any deceased children . . ."

Lehman v. Lehman, 215 Pa. 344, is a case which involved the disposition of the proceeds of partition of property purchased by a widow from the proceeds of a life insurance policy on the life of her deceased husband. The husband's policy had provided that such proceeds were payable "to Elizabeth A. Lehman, his wife, in trust for herself and their children in equal shares . . ." It was held that the term "their children" included the insured's children by a prior marriage. The Supreme Court expressed in this case a principle of construction which is readily applicable in the case at bar when it held, at page 350:

". . . A policy of life insurance, although not a testament, is, like the provisions of a will, to be liberally construed in favor of the ones who may naturally be presumed to have been the special objects of bounty: (citing cases) . . ."

Eleanor McEwan was a special and primary object of the bounty of the settlors of the trust. The benefits provided for her were a recognition of the important and substantial service which she rendered to the congregation of the Third Presbyterian Church as the

competent wife and helpmate of an able pastor. It seems plain that it was the intention of the settlors of the trust that the "children" who are to share in the distribution of the principal of the trust are all of her children, including George Colvin, the claimant, as well as the children of her marriage to the Rev. Dr. McEwan. As the Supreme Court held in Witman v. Webner, supra, at page 507:

"It is well settled that if a person qualifies within the exact meaning of language describing a class he will be held to be a member of that class unless other language in the instrument expressly or by clear implication indicates a contrary intent: *Robinson's Estate*, 266 Pa. 251, 109 A. 924; *Hogg's Estate*, 329 Pa. 163, 196 A. 503; *Rosengarten Estate*, 349 Pa. 32, 39, 36 A. 2d 310, 313, 314."

The deed of trust in the case at bar appears to have been drawn with professional skill. Had it been the intention of the settlor to limit the beneficiaries of the principal of the trust to the children of the marriage of the two life tenants, this could have been expressed simply and easily. But this is not the language of the deed. It provides explicitly and unmistakably that upon the death of the survivor of the two life tenants the principal of the trust shall go ". . . to the children of *both* said William L. and Eleanor McEwan and the issue of any deceased children, taking by representation, . . ." (Italics supplied.).

There is nothing in the deed which manifests impliedly or expressly that George Colvin, the son of Eleanor McEwan by her first marriage, is to be excluded from the distribution of the principal of the trust. From a consideration of the language of the deed and the attending circumstances it seems obvious that it was the intention of the settlors that George Colvin be one of the beneficiaries of the principal of the trust.

The auditing judge holds that it is the expressed intention of the settlors of the trust that the principal of the trust be distributed in equal shares among all of the children of Eleanor McEwan, the surviving life tenant, now deceased, including her son, George Colvin, and her other children born of her marriage to Rev. Dr. McEwan and to the issue per stirpes of those of her children who are deceased.

A decree will be entered in accordance with this opinion.